**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE CONNECTICUT LIGHT AND POWER COMPANY, et al., *Plaintiffs*, | No. 3:26-cv-01034-SFR |
| v. | |
| CLAIRE E. COLEMAN, in her official capacity as Counsel of the Connecticut Office of Consumer Counsel, et al., *Defendants*. | September 25, 2026 |

**Defendants' Memorandum of Law in Support of Joint Motion to Dismiss Amended Complaint**

On July 1, 2025, Connecticut enacted a law creating a new requirement for the state's electric distribution companies: if those companies wished to own or control electric transmission facilities within Connecticut, then they must participate in New England's regional transmission organization ("RTO") or a successor RTO. The enactment of this law, codified as Conn. Gen. Stat. Section 16-244gg, changed little for the Plaintiffs here—Connecticut's two electric distribution companies (together, the "EDCs")—when it was enacted. They both have owned transmission facilities in Connecticut for decades and have participated in New England's RTO, ISO New England Inc. ("ISO-NE"), since its founding.

When the EDCs joined New England's regional transmission organization in 2004, the Federal Energy Regulatory Commission ("FERC") awarded them a 50-basis point increase to the return on equity component of certain transmission electric rates. This payment, the RTO Adder, is intended to incentivize the EDCs' voluntary participation in ISO-NE, acting as a reward for voluntary RTO participation. On June 11, 2026, Defendants' agencies filed a Federal Power Act ("FPA") complaint at FERC alleging that the RTO Adder was no longer necessary to incentivize the EDCs'

participation in ISO-NE because Section 16-244gg required the EDCs to participate.[1] In other words, because the EDCs were required to participate in ISO-NE, there was no voluntary participation that could be incentivized, and so no justification for the RTO Adder. In response, the EDCs promptly filed this action on June 29, 2026. In their Amended Complaint—and despite their quiescence in the year after the General Assembly enacted Section 16-244gg—the EDCs allege that as soon as it was enacted, Section 16-244gg unconstitutionally limited several of their rights. They ask this Court to declare the law unconstitutional and enjoin Defendants from enforcing it against them. But their challenge has several dispositive defects.

The first defect arises from the jurisdictional bar of the U.S. Constitution's Eleventh Amendment. It operates here to make Defendants, who are state officials sued in their official capacities, immune from suit in this Court. The EDCs attempt to overcome this constitutional protection by invoking a narrow exception found in *Ex parte Young*, 209 U.S. 123 (1908), but the attempt fails. As discussed below, Defendants Coleman, Dykes, and Tong have no duty or authority to enforce Section 16-244gg, so *Ex parte Young* cannot lift the Eleventh Amendment's jurisdictional bar as to them. And though the Public Utilities Regulatory Authority ("PURA") Defendants have the requisite duty and authority,[2] the EDCs have failed to allege any facts from which this Court could plausibly infer that PURA is credibly threatening to enforce Section 16-244gg against them, now or in the future. Indeed, the EDCs allege no facts suggesting that they ever intend to engage in the conduct that Section 16-244gg prohibits: ending their participation in ISO-NE (or a successor RTO) while continuing as electric distribution companies that own or control transmission facilities within the

---

[1] Complaint of Connecticut State Agencies Challenging RTO Adder Cost & Requesting Termination, *Conn. Dep't of Energy & Env't Protection v. ISO New England Inc.,* Docket No. EL26-79 (June 11, 2026), eLibrary No.20260611-5136 (FERC Complaint). Defendants have moved to dismiss the FERC Complaint, including on grounds of Federal Power Act preemption. Motion to Dismiss and Answer of The Connecticut Light and Power Company and The United Illuminating Company, *Conn. Dep't of Energy & Env't Protection v. ISO New England Inc.,* Docket No. EL26-79 (July 1, 2026), eLibrary No. 20260701-5334.

[2] The PURA Defendants are Defendants Thomas Wiehl, David Arconti, Janice Beecher, Holly Cheeseman, and Everett Smith.

state of Connecticut. This is a second defect. Without facts establishing a specific and credible threat of enforcement of the challenged law, such that PURA has demonstrated its willingness to enforce the law against the EDCs, *Ex parte Young* also does not permit suit against the PURA Defendants.

For similar reasons, the EDCs also lack Article III standing to bring this action—a third defect requiring dismissal here. The non-PURA Defendants have no authority to enforce Section 16-244gg. So, any injury arising from its enforcement is neither traceable to those Defendants nor remedied by an injunction against them. And because the EDCs have not alleged facts establishing that they wish to engage in the conduct that Section 16-244gg prohibits, they have failed to establish an injury-in-fact related to enforcement of Section 16-244gg traceable to the PURA Defendants and so failed to establish standing to sue them. Nor can the EDCs establish standing by relying on any purported future injury caused by FERC's potential removal of their RTO Adder. FERC's exercise of independent, uncoerced, and exclusive judgment in that ratemaking decision breaks the chain of causation necessary to establish a traceable Article III injury. The EDCs have alleged no other injuries that might provide standing.

Because the EDCs have not met their burden of pleading facts establishing both an exception to Defendants' sovereign immunity and their standing to sue for injunctive and declaratory relief here, this Court must dismiss this action for lack of subject-matter jurisdiction. And even if the EDCs could bring this action, the FPA preemption claims—Counts 1 and 2—must be dismissed for failure to state a claim. There is no statutory, constitutional, or equitable cause of action permitting the EDCs to pursue their FPA preemption claims in federal court. Congress intended that FERC adjudicate those claims.[3] In short, the EDCs sued Defendants in federal court because Defendants asked FERC to terminate the EDCs' RTO Adder. FERC will decide whether to grant this request. The simple act of

[3] *See* Response of Connecticut State Agencies in Opposition to Motion to Hold Proceeding in Abeyance at 4-7, *Conn. Dep't of Energy & Env't Protection v. ISO New England Inc.*, Docket No. EL26-79 (July 16, 2026), eLibrary No. 20260716-5106.

making it raises no constitutional issues, and whatever challenges can be made to Defendants' FERC action belong before FERC, not this court. The Court should grant this motion to dismiss.

## I. Background

### A. Factual background

The Connecticut Light and Power Company ("CLP") and the United Illuminating Company ("UI") are electric distribution companies that own or control electric transmission facilities in Connecticut. Amended Complaint, ECF No. 21 ¶¶ 10, 28-29 [hereinafter "AC"].[4] Electric transmission facilities are the parts of the electric grid connecting facilities that generate electricity with local electric grids that distribute electricity to end-use customers. AC ¶ 39. Generally, FERC regulates the transmission of electricity in interstate commerce, 16 U.S.C. § 824(b), and sets the rates transmission facility owners may charge for interstate transmission services. FERC reviews transmission service rates under Sections 205 and 206 of the FPA; under Section 205, a utility proposes a new rate or changes to existing rates or service terms, while under Section 206, a complainant can challenge an existing rate or rule. 16 U.S.C. §§ 824d, 824e.

The United States' national electric grid is divided into several regions; transmission operations for these regional grids are coordinated by regional grid operators. AC ¶ 44. The regional grid operator for most of New England, including all of Connecticut, is ISO-NE. AC ¶¶ 9-10, 45, 54. ISO-NE is an RTO that was approved by FERC in March 2004. AC ¶ 54. The EDCs are original members of the group of utilities that proposed to establish ISO-NE as an RTO in 2004. AC ¶¶ 10, 54. They have been "transmission-owning members of ISO-NE" since it was established. AC ¶ 56. When ISO-NE was founded, one of its governing documents was the Transmission Operating Agreement ("TOA"). AC ¶ 11. The TOA, as amended, continues to form part of the governance structure of ISO-NE

[4] Defendants rely on the factual allegations in the Amended Complaint to support their challenges under Rules 12(b)(1) and 12(b)(6) at this stage in the litigation but do not concede that the factual allegations are true for any other purpose.

today. AC ¶ 57. In the TOA, the EDCs grant ISO-NE some of their Section 205 filing rights. AC ¶ 97. And in the TOA, the EDCs retain the contractual right to leave ISO-NE in certain circumstances. AC ¶¶ 58-66.

Further, when ISO-NE became the RTO for most of New England, the EDCs voluntarily transferred "the day-to-day operational control authority over their transmission facilities" to ISO-NE. AC ¶ 54. In return, FERC granted the EDCs a 50-basis point incentive to the return on equity component of certain transmission electric rates, the RTO Adder. AC ¶¶ 53-54. More specifically, the EDCs received an increase of 50 basis points to the "[return on equity] component recovered in [ISO]-NE's transmission rates for Regional Network service." *ISO New Eng. Inc. v. New Eng. Power Pool*, 106 F.E.R.C. P61,280, at 62056 (March 24, 2004). The RTO Adder is thus ultimately included in the electric rates "billed to end-use customers" within ISO-NE. AC ¶ 51. The EDCs have continued to bill ratepayers transmission rates calculated by including the RTO Adder since it was first approved by FERC in 2004 as compensation for continuing to voluntarily cede day-to-day operational control authority over their transmission facilities to ISO-NE. AC ¶¶ 54, 56.

When the EDCs proposed ISO-NE as the New England RTO, their participation in ISO-NE was voluntary, and they could leave ISO-NE under certain conditions. AC ¶ 10-11, 58-66. In 2025, however, Connecticut's General Assembly enacted a law that made the EDCs' participation in ISO-NE or a successor RTO mandatory as long as they wished to remain as Connecticut electric distribution companies that also owned transmission facilities in Connecticut.

### B. The challenged Connecticut law: Section 28 of Public Act 25-173, Conn. Gen. Stat. § 16-244gg

The General Assembly made the EDCs' participation in ISO-NE or a successor RTO mandatory on July 1, 2025, through Section 28 of Public Act 25-173 (codified as General Statutes Section 16-244gg). That statute requires that "[o]n and after July 1, 2025, no electric distribution company shall own or control transmission facilities, as defined in subdivision (1) or (4) of subsection

(a) of section 16-50i and located in the state unless such company participates in the regional independent system operator." Conn. Gen. Stat. § 16-244gg(b). Under Section 16-244gg, "electric distribution company" and "regional independent system operator" have "the same meanings as provided in section 16-1." Conn. Gen. Stat. § 16-244gg(a). Except for exclusions not relevant here, then, an electric distribution company is "any person providing electric transmission or distribution services within the state," and a regional independent system operator is "'ISO - New England, Inc.', or its successor organization as approved by the Federal Energy Regulatory Commission." Conn. Gen. Stat. §§ 16-1(a)(23), (31). Both CLP and UI are electric distribution companies under Section 16-1, AC ¶ 87, own transmission facilities in Connecticut as those facilities are defined in Section 16-50i, AC ¶ 56, and thus must comply with Section 16-244gg and participate in ISO-NE or a successor RTO. Though the EDCs must comply with Section 16-244gg, that Section does not charge any specific state official with enforcing its requirements. While silent on how it can be enforced, the provision resides in a chapter that is enforced by PURA. *See* Conn. Gen. Stat. §§ 16-244gg(b), 16-41(a), 16-244i(a).

On June 11, 2026, Defendants' agencies filed a complaint with FERC ("FERC Complaint"), asking FERC to revoke the EDCs' RTO Adder. AC ¶ 14. The RTO Adder is an "incentive adder" intended to incentivize transmission asset owners' voluntary participation in an RTO. *ISO New Eng. Inc.*, 106 F.E.R.C. at 62056. The FERC Complaint asserts that because the EDCs are now required by Section 16-244gg to participate in ISO-NE, the RTO Adder cannot incentivize their continued *voluntary* participation in ISO-NE. Accordingly, the FERC Complaint asks FERC to find that it is unjust and unreasonable for the EDCs to continue to include the RTO Adder in their FERC-jurisdictional transmission rates, and it asks FERC to direct the EDCs to remove it from their transmission rates going forward as of the date of the filing of the FERC Complaint. AC ¶ 14. The removal of the RTO Adder would be reflected in, and thus reduce, the electric rates billed to end-use

customers. AC ¶ 10. In response to the FERC Complaint (which remains pending), the EDCs filed this action.

### C. This action

On June 29, 2026—about two and a half weeks after Defendants filed the FERC Complaint but almost a year after Section 16-244gg went into effect—the EDCs filed this action against eight Connecticut state agency officials. Complaint, ECF No. 1. The EDCs amended their complaint on July 1, 2026. ECF No. 21. In the Amended Complaint, the EDCs sued, in their official capacities only: Claire E. Coleman, the Consumer Counsel of the Connecticut Office of Consumer Counsel ("OCC"); William Tong, Attorney General of the State of Connecticut; Katherine S. Dykes, the former Commissioner of the Connecticut Department of Energy and Environmental Protection ("DEEP");[5] and Thomas Wiehl, David Arconti, Janice Beecher, Holly Cheeseman, and Everett Smith, all of whom are Commissioners of the Connecticut Public Utilities Regulatory Authority. AC ¶¶ 30-37.

The EDCs allege that each sued official's agency has some relationship with either energy policy or law enforcement in Connecticut. OCC has a "statutory responsibility to represent customers of Connecticut's regulated utilities (including electric) on behalf of consumer interests." AC ¶ 30. The Attorney General "is the chief civil legal officer of the State, and the state constitution and law authorize the Attorney General to represent the interests of the people of the State of Connecticut in all civil legal matters involving the state to protect the public interest." AC ¶ 31. DEEP, "[a]s relevant here, . . . is charged with reducing energy costs for customers in the State" and "is the lead complainant in the FERC Complaint." AC ¶ 32. And PURA "operates as a division within DEEP and is responsible for regulating the electric sector in Connecticut." AC ¶ 33. The EDCs do not allege that any of these

[5] Former Commissioner Dykes left DEEP in July 2026, and the current state official leading DEEP is Acting Commissioner Emma Cimino.

officials have any specific connection to, or any particular duty or authority to enforce, Section 16-244gg.

The EDCs allege that Section 16-244gg violates several clauses of the U.S. Constitution. First, they allege in Counts 1 and 2 that Section 16-244gg violates the Supremacy Clause in two different ways. In Count 1, the EDCs allege that their qualified contractual right to withdraw from ISO-NE under the TOA "constitute[s] part of [an FPA] filed rate and thus the tariff," AC ¶ 85, so "the TOA, as part of the filed rate, has the force of federal law," and Section 16-244gg, by "contradict[ing] or interfer[ing]" with that withdrawal right, violates the Supremacy Clause, AC ¶ 90. In Count 2, the EDCs allege that Section 16-244gg is both conflict- and field-preempted by the FPA and FERC's regulations implementing it. AC ¶¶ 92-106.

Second, the EDCs claim in Count 3 that Section 16-244gg is both a physical and regulatory taking under the Takings Clause. AC ¶¶ 107-128. As to any physical taking, they allege that Section 16-244gg "mandates continued and permanent membership in ISO-NE" and that this requires them to cede property rights to ISO-NE. AC ¶ 114.[6] As to any regulatory taking, the EDCs allege that Section 16-244gg "substantially impair[s]" their "ability to obtain the full return on equity to which [they are] entitled," AC ¶ 122, and that they expected to continue receiving the RTO Adder as long as they chose to remain in ISO-NE, AC ¶¶ 123-125. Section 16-244gg, they say, requires the EDCs to "permanently hand over control of [their] transmission system to [ISO-NE]," "grant[ing] substantial control over [their] property to [ISO-NE]" without compensation, a "significant trammeling of [the EDCs'] property rights" that amounts to a regulatory taking. AC ¶ 126.

---

[6] The only allegation the EDCs make of a specific property right that may be impinged is that "under the TOA, ISO-NE is granted exclusive authority over dispatch, transmission outage scheduling, approval of new interconnections, and—pursuant to FERC Order No. 1000—broader control over transmission planning," and Section 16-244gg requires the EDCs to cede this right to ISO-NE permanently. AC ¶ 115.

Third, the EDCs allege in Count 4 that Section 16-244gg violates the Contracts Clause by substantially impairing their qualified right to withdraw from ISO-NE without advancing a significant and legitimate public purpose. AC ¶ 129-139. And fourth, in Count 5 the EDCs allege that Section 16-244gg imposes an unconstitutional condition, conditioning their continued ownership of transmission facilities as electric distribution companies on them surrendering their property and contract rights. AC ¶ 143.

Each count of the Amended Complaint is principally brought under 42 U.S.C. Section 1983 and *Ex parte Young*. AC ¶ 23 ("Plaintiffs' causes of action arise under 42 U.S.C. § 1983 and the United States Constitution."); AC at pp. 22, 25, 28, 32, 34 (invoking *Ex parte Young* for each count).[7] Except for the allegation that the Defendants' state agencies filed the FERC Complaint, nowhere in any of the five counts of the Amended Complaint, or elsewhere in the Amended Complaint, do the EDCs identify any Defendant's specific conduct that caused or contributed to the alleged constitutional violations.

To address their alleged constitutional violations, the EDCs seek several remedies. They ask this Court to declare "that the RTO Requirement[, Section 16-244gg,] is invalid" because it is preempted, violates the Takings Clause and Contracts Clause, and imposes unconstitutional conditions. AC at p. 36. They ask this Court to permanently enjoin "Defendants from enforcing the RTO requirement." *Id.* And they ask this Court to award "costs and reasonable attorneys' fees," including "under 42 U.S.C. § 1988," and "all such other relief to which they may be entitled." *Id.*

---

[7] All counts of the Amended Complaint also cite the Declaratory Judgment Act ("DJA"), 28 U.S.C. Sections 2201(a) and 2202; "[i]t is well established, however, that the DJA is procedural in nature and neither augments nor diminishes the jurisdiction of the federal courts." *United States v. Doherty*, 786 F.2d 491, 499 n.11 (2d Cir. 1986).

## II. Legal Standard

Defendants bring this Motion under Rules 12(b)(1) and 12(b)(6).[8] "The standard that governs a motion to dismiss under Rules 12(b)(1) and 12(b)(6) is well established." *Beatty v. Gilman*, 718 F. Supp. 3d 166, 178 (D. Conn. 2024). As this Court recently observed, "'[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Parker v. Conn. Judicial Branch*, No. 3:25-CV-815 (SFR), 2026 U.S. Dist. LEXIS 165715, at *6 (D. Conn. July 27, 2026) (quoting *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)). "It is well-settled that the plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Id.* at *7 (internal quotation marks omitted). And though a "court 'must accept as true all material factual allegations in the complaint,' a court should not 'draw inferences from the complaint favorable to [the plaintiff].'" *Id.* (alteration in original, quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).

Under Rule 12(b)(6), "[a] complaint may not survive unless it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at *5-6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The court must draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief," but it need not "accept conclusory allegations or legal

---

[8] A Rule 12(b)(1) motion is the proper vehicle to seek dismissal based on Defendants' Eleventh Amendment sovereign immunity. *Baroni v. Port Auth. of N.Y. & N.J.*, 161 F.4th 48, 54 (2d Cir. 2025) ("Because state sovereign immunity is a jurisdictional limitation on the power of federal courts, it may deprive such a court of subject matter jurisdiction. Accordingly, state sovereign immunity raises a threshold question that must be resolved . . . before proceeding to the merits." (internal citations and quotation marks omitted)); *see also Morabito v. New York*, 803 F. App'x 463, 465 n.2 (2d Cir. 2020) (summary order) ("Although the district court characterized its dismissal as falling under Rule 12(b)(6), it is more appropriately characterized as a dismissal under Rule 12(b)(1), as it was based on sovereign immunity."). It is also the appropriate vehicle to raise the EDCs' failure to allege facts sufficient to meet their burden to establish standing. *Liberian Cmty. Ass'n. of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020). Similarly, dismissal for lack of a private cause of action is a question of law properly decided under Rule 12(b)(6). *Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554, 565 (S.D.N.Y. 2017), *aff'd on other grounds*, 906 F.3d 41 (2d Cir. 2018), *cert. denied sub nom.*, *EPSA v. Rhodes*, 587 U.S. 938 (2019); *see also Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1113 (2d Cir. 2024) (affirming district court's dismissal pursuant to Rule 12(b)(6) of statutory claims for lack of a private cause of action).

conclusions masquerading as factual conclusions." *Id.* at *6 (internal quotation marks omitted, alteration in original.).

## III. Argument

### A. Eleventh Amendment sovereign immunity bars all the EDCs' claims because the narrow exception in *Ex parte Young* does not apply to any Defendant.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). Though "the text of the amendment speaks only of suits against a state by persons who are not citizens of that state, the Supreme Court has interpreted the Eleventh Amendment to extend to suits by all persons against a state in federal court." *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71, 79 (2d Cir. 2024) (internal quotation marks omitted). "The Eleventh Amendment's so-called 'jurisdictional bar' applies 'regardless of the nature of the relief sought.'" *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).[9]

Further, "[i]t is well-settled that [a]n action against a state official in his official capacity is deemed an action against the state itself . . . which possesses sovereign immunity under the Eleventh Amendment." *Walden v. Kosinski*, 153 F.4th 118, 133 (2d Cir. 2025) (internal quotation marks omitted). The Eleventh Amendment is thus a "jurisdictional limitation on the power of federal courts" that "effectively places suits by private parties against states," and against state officials in their official capacities, "outside the ambit of Article III of the Constitution." *Ossen v. Dep't of Soc. Servs.*, 361 F.3d 760, 765 (2d Cir. 2004); *accord In re 995 Fifth Ave. Assocs., L.P.*, 963 F.2d 503, 506 (2d Cir. 1992) ("The Eleventh Amendment, where applicable, deprives a federal court of jurisdiction.").

---

[9] The Eleventh Amendment thus prevents suits against states for money damages, injunctive relief, or declaratory relief absent a constitutionally valid and applicable abrogation, exception, or waiver. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("That Amendment bars suits that seek either money damages or injunctive relief." (internal citations omitted)); *Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) (summary order) (citing, for proposition that state has immunity against declaratory relief, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)).

Defendants bear the initial burden of establishing entitlement to immunity. *N.Y. State Bd. of Law Exam'rs*, 110 F.4th at 79 ("The Board, as the party asserting immunity, bears the burden of demonstrating entitlement."). But once they have, as Defendants have here because they are state officials sued in their official capacities, "consistent with a plaintiff's ultimate burden of establishing subject matter jurisdiction, . . . the plaintiff bears the burden of establishing that an exception to sovereign immunity applies." *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 30 (D. Conn. 2022).

In circumstances not applicable here, a state may waive its sovereign immunity, or Congress may abrogate it. *Ossen*, 361 F.3d at 765. The EDCs do not allege waiver or abrogation in their Amended Complaint, however.[10] They instead purport to bring all their claims under the *Ex parte Young* exception. *See* AC at pp. 22, 25, 28, 32, 34 (each count brought under 42 U.S.C. § 1983 via *Ex parte Young*). *Ex parte Young* is "a limited exception to state defendants' Eleventh Amendment immunity." *Walden*, 153 F.4th at 133 (referencing *Ex parte Young*, 209 U.S. 123 (1908), internal quotation marks omitted). It "applies against [otherwise immune] officials 'who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 156).

[10] Neither abrogation nor waiver exist here. As to abrogation, the only alleged statutory vehicle for all the EDCs' claims, Section 1983, does not abrogate Eleventh Amendment sovereign immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect"). As to waiver, "a stringent test is used to determine whether waiver has occurred." *McGinty v. New York*, 251 F.3d 84, 93 (2d Cir. 2001) (internal quotation marks omitted). "A state can waive its Eleventh Amendment immunity to suit in three ways: (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding, (2) by consent to or participation in a federal program for which waiver of immunity is an express condition, or (3) by affirmative conduct in litigation." *New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004) (internal citations omitted); *McGinty*, 251 F.3d at 92-95 (recognizing same three bases). Here, the EDCs do not allege—and it is not the case—that Connecticut has clearly declared that it consents to this suit, has participated in a relevant federal program waiving immunity, or waived immunity by litigation conduct. So, the EDCs have not and cannot meet their burden of establishing that Connecticut has waived its Eleventh Amendment sovereign immunity.

But this exception is "narrow"; it only applies if several criteria are met. *Whole Woman's Health*, 595 U.S. at 39. First, "[a] plaintiff may invoke this exception provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) (internal quotation marks omitted). Second, the state official sued "must have some connection with the enforcement of the act that is in continued violation of federal law." *Walden*, 153 F.4th at 133 (internal quotation marks omitted). And third, even if the state official sued does have the requisite connection to enforcement of the challenged act, that official must be engaged in a *continuing violation* of federal law that a court can enjoin. This means that plaintiffs must establish that the sued state official "is herself committing any ongoing violation of federal law, *i.e.*, that the [official] is enforcing or threatening to enforce the allegedly unconstitutional provisions of [the act] to the injury of Plaintiffs, that could be remedied by granting prospective injunctive relief against the [official]." *Chrysafis v. James*, 534 F. Supp. 3d 272, 287 (E.D.N.Y. 2021) (collecting cases).

Here, the EDCs allege that Section 16-244gg is unconstitutional and seek an injunction "prohibiting Defendants from enforcing it." AC at p. 36. They thus allege a violation of federal law and seek prospective relief. But they have failed to meet their burden to establish that their claims come within the narrow *Ex parte Young* exception. Consumer Counsel Coleman, former DEEP Commissioner Dykes, and Attorney General Tong are improper *Ex parte Young* defendants. They have no particular duty or authority to enforce Section 16-244gg because Section 16-244gg is an electric distribution company franchise requirement that can only be enforced by PURA. And though PURA at least has the requisite duty and authority, the EDCs have alleged no facts from which this Court could plausibly infer that there is a specific and credible threat that PURA is enforcing or threatening to enforce Section 16-244gg against them. Nor have the EDCs alleged facts suggesting that PURA is likely to enforce Section 16-244gg against them in the future. To establish a plausible inference of current or future enforcement by PURA, the EDCs must allege facts suggesting that they intend to

do what Section 16-244gg prohibits: that they intend to cease participating in ISO-NE while retaining ownership or control of transmission facilities in Connecticut. That is the only action that would violate Section 16-244gg and trigger PURA's enforcement of it against the EDCs by, for example, PURA imposing civil penalties or suing in Superior Court. The EDCs allege no facts plausibly suggesting that they ever intend to leave ISO-NE and so fail to establish the required threat of current or future enforcement. The *Ex parte Young* exception to sovereign immunity thus does not apply here, so this Court lacks jurisdiction to hear this case and must dismiss it.

**1. Defendants Coleman, Dykes, and Tong are improper defendants under *Ex parte Young* because they have no connection with the enforcement of Conn. Gen. Stat. § 16-244gg.**

In *Ex parte Young*, the Supreme Court observed that the Eleventh Amendment made it "plain" that for a state officer to be a proper defendant, "such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party." *Ex parte Young*, 209 U.S. at 157. For each official sued, then, the EDCs must "direct this Court to any enforcement authority" the official "possesses in connection with" Section 16-244gg "that a federal court might enjoin him from exercising." *Whole Woman's Health*, 595 U.S. at 43; *id.* at 46 ("*Ex parte Young* . . . permits equitable relief against only those officials who possess authority to enforce a challenged state law."). Accordingly, consistent with *Ex parte Young* and *Whole Woman's Health*, courts have consistently held—and this Court recently reiterated—that for a state official to be a proper defendant it is "[i]mportant" that "the official being sued must have (1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty." *We the Patriots USA, Inc. v. Lamont*, No. 3:23-cv-00737 (KAD), 2024 U.S. Dist. LEXIS 51190, at *6 (D. Conn. Mar. 22, 2024) (citing cases, including *Roberson v. Cuomo*, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021), which collected cases on this issue). And as part of establishing *demonstrated* willingness to enforce the challenged law, a plaintiff must establish a specific and credible

threat of current or future enforcement by the sued official, alleging facts suggesting that the official is "taking enforcement action" or has the "intention to do so" against the plaintiff. *See HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 295-96 (W.D.N.Y. 2010), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. Sept. 12, 2011) (summary order).

Here, the EDCs have not alleged any facts in the Amended Complaint about which state officials have the authority and duty to enforce Section 16-244gg. Only PURA has this authority and particular duty (though, again and as explained below, it has not credibly threatened to exercise it and so *Ex parte Young* does not apply to the PURA commissioners for that reason). Neither Consumer Counsel Coleman, former Commissioner Dykes, or Attorney General Tong have a particular duty or authority to enforce Section 16-244gg. They are thus improper *Ex parte Young* defendants.

**a. Only the PURA Commissioners can enforce Conn. Gen. Stat § 16-244gg.**

Section 16-244gg imposes a specific requirement on electric distribution companies: if an electric distribution company wishes to "own or control transmission facilities" in Connecticut, then it must "participate[] in the regional independent system operator." Conn. Gen. Stat. § 16-244gg(b). Section 16-244gg does not establish a specific penalty for electric distribution companies that own or control transmission facilities but do not participate in ISO-NE, and it does not identify what entity ensures that electric distribution companies comply with it. *See* Conn. Gen. Stat. § 16-244gg. But Section 16-244gg appears in Chapter 283 of Title 16, the title regulating all public service companies, including electric distribution companies. Conn. Gen. Stat. § 16-1(a)(3). That chapter, as with most of Title 16, is exclusively enforced by PURA, the entity the EDCs allege "is responsible for regulating the electric sector in Connecticut." AC ¶ 33. Because PURA is the regulator of public service companies, each "public service company and its officers, agents and employees . . . shall obey, observe and comply with all applicable provisions of this title and each applicable order made or applicable regulations adopted by the Public Utilities Regulatory Authority by virtue of this title." Conn. Gen.

Stat. § 16-41(a). Indeed, Title 16 explicitly recognizes that "[t]he Public Utilities Regulatory Authority shall continue to regulate electric distribution companies" and "oversee quality and reliability of service for each electric distribution company." Conn. Gen. Stat. § 16-244i(a), (d).

When an electric distribution company does not comply with the provisions of Title 16, PURA has several mechanisms to bring the company into compliance. For example, PURA may fine the company or order it to pay restitution if PURA finds that the company "has failed to obey or comply with any such provision of this title" or any "applicable order made or applicable regulations adopted by [PURA] by virtue of this title." Conn. Gen. Stat. § 16-41(a). PURA may also apply to Connecticut Superior Court for any "appropriate decree or process" necessary to enforce "any order of the authority rendered in pursuance of any statutory provision." Conn. Gen. Stat. § 16-10. And PURA may revoke or reassign an electric distribution company's franchise if it finds that the company's noncompliance with Title 16 requirements has caused it to "fail[] to provide service which is adequate to serve the public convenience and necessity." Conn. Gen. Stat. § 16-10a(a). PURA, as Connecticut's electric sector regulator, thus has the authority and particular duty to enforce Section 16-244g against the EDCs when required. But no other state agency sued in this case through their officials does.

**b. Attorney General Tong has no particular duty to enforce Conn. Gen. Stat. § 16-244gg and so is an improper *Ex parte Young* defendant.**

The Supreme Court made clear in *Ex parte Young* itself that an "attorney general" is not a proper defendant simply because he "might represent the State in litigation involving the enforcement of its statutes." *Ex parte Young*, 209 U.S. at 157 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). Nor is the Attorney General a proper Defendant based on his "general authority to enforce the laws of the state." *Chrysafis*, 534 F. Supp. 3d at 293 (quoting *HealthNow*, 739 F. Supp. 2d at 294) (holding that an attorney general was not a proper defendant). Rather, the Attorney General is a proper Defendant only if the EDCs' allegations plausibly establish that he has "(1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty." *We the Patriots USA, Inc.*, 2024 U.S.

Dist. LEXIS 51190, at *6; *Healthnow*, 739 F.Supp. 2d at 295 (Attorney General must be tasked with enforcement of challenge law by law itself or by other state statute equivalent to "a special charge" in challenged law).

The EDCs have not met that burden. Their only allegations regarding the Attorney General's enforcement of Section 16-244gg itself are that he "is the chief civil legal officer of the State, and the state constitution and law authorize the Attorney General to represent the interests of the people of the State of Connecticut in all civil legal matters involving the state to protect the public interest." AC ¶ 31. This is the kind of general allegation that courts have held is insufficient under *Ex parte Young*.[11] And the EDCs allege no facts about the Attorney General's authority or particular duty to enforce Section 16-244gg itself. Nor could they, because the Attorney General has only limited enforcement authority over certain parts of Title 16, and that authority does not encompass Section 16-244gg.

The Attorney General may investigate and prosecute anticompetitive, discriminatory, or unfair or deceptive practices in the electric sector. Conn. Gen. Stat. § 16-245u. He may also enforce certain provisions of Chapter 277a, the Public Utility Environmental Standards Act. *E.g.*, Conn. Gen. Stat. §§ 16-50u, 16-50p. And he may apply to the Superior Court for any "appropriate decree or process" necessary to enforce "any provision of this chapter"—i.e., Chapter 277, the chapter in which this language appears—or "any order of [PURA]" rendered under "any statutory provision." Conn. Gen. Stat. § 16-10. Section 16-244gg, however, appears in Chapter 283. *See* Conn. Gen. Stat. § 16-244gg. It is thus outside the independent enforcement authority granted to the Attorney General by Section 16-10. *See Whole Woman's Health*, 595 U.S. at 43-44 ("attorney general 'may institute an action for a civil penalty of $1,000' for violations of 'this subtitle['] . . . . But the qualification 'this subtitle' limits the

---

[11] *See, e.g.*, *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 385 (S.D.N.Y. 2023) ("the Attorney General's general duty to enforce the laws is not sufficient to make her a proper party in a suit challenging a state statute"); *HealthNow, Inc.*, 739 F. Supp. 2d at 295 ("The Ex parte Young special relation requirement of a defendant's proximity to and responsibility for the challenged state action is not met where, as here, an official merely possesses [g]eneral authority to enforce the laws of the state." (internal quotation marks omitted)).

attorney general's enforcement authority" to a portion of state code, and the challenged act "does not fall within 'this subtitle.'" (quoting challenged act)). The Attorney General has no independent authority or duty to enforce the requirements of Section 16-244gg, and, therefore, the Attorney General is an improper *Ex parte Young* defendant here.

**c. Consumer Counsel Coleman has no particular duty to enforce Conn. Gen. Stat. § 16-244gg and so is an improper *Ex parte Young* defendant.**

Defendants sued Consumer Counsel Coleman because OCC has a "statutory responsibility to represent customers of Connecticut's regulated utilities (including electric) on behalf of consumer interests." AC ¶ 30. But that is all they allege about OCC's duties and authorities—they do not allege that OCC has any particular duty or authority to enforce Section 16-244gg (or any other law). And OCC does not. OCC is an advocate, not an enforcer. As relevant here, OCC is the "advocate for consumer interests in all matters which may affect consumers in the state with respect to public service companies." Conn. Gen. Stat. § 16-2a(a). In this role, OCC may "appear in and participate in any regulatory or judicial proceedings, federal or state, in which such interests of consumers in the state may be involved, or in which matters affecting utility services rendered or to be rendered in this state may be involved," including contested cases before PURA. *Id.* OCC may also seek to persuade agencies with enforcement authority, such as PURA and FERC, to act. *See, e.g.,* Conn. Gen. Stat. § 16-25a (OCC may petition PURA, but PURA retains sole authority to determine "whether it will hold a hearing on the petition"); Conn. Gen. Stat. § 16-6a (OCC may "participate in proceedings before agencies of the federal government and the federal courts on matters affecting utility services" in Connecticut). But OCC has no duty or authority to enforce any law itself, including Section 16-244gg. For example, OCC cannot, to enforce Section 16-244gg, file suit in court or initiate compliance proceedings using its own power. At most, it can only ask the agency with enforcement power, PURA, to consider enforcing Section 16-244gg. Like the Attorney General, then, Consumer Counsel Coleman

is an improper *Ex parte Young* defendant here because OCC has no particular duty or authority to enforce Section 16-244gg.

#### d. Former DEEP Commissioner Dykes has no particular duty to enforce Conn. Gen. Stat. § 16-244gg and so is an improper *Ex parte Young* defendant.

The EDCs sued the former DEEP Commissioner because DEEP "is charged with reducing energy costs for customers in [Connecticut]" and "is the lead complainant in the FERC Complaint." AC ¶ 32. As with the Attorney General and Consumer Counsel, the EDCs allege nothing else about DEEP specifically, including nothing about whether DEEP has any particular duty or authority to enforce Section 16-244gg itself. And as with the other non-PURA Defendants, DEEP does not have this duty or authority. This legal reality is dispositive and requires dismissal of the EDCs' action against Defendant Dykes. *See We the Patriots USA, Inc.*, 2024 U.S. Dist. LEXIS 51190, at *6 ("particular duty to enforce" required); *Walden*, 153 F.4th at 133 (official must have connection with enforcement of specific law).

While DEEP does have a broad portfolio over which it has regulatory authority*, see* Conn. Gen. Stat. § 22a-2d(a) (DEEP has "jurisdiction relating to the preservation and protection of the air, water and other natural resources of the state, energy and policy planning and regulation and advancement of telecommunications and related technology."), DEEP's power to regulate electric distribution companies is limited to specific energy issues not relevant here, such as energy supply options or energy efficiency programs, *see, e.g.*, Conn. Gen. Stat. § 16-244c(b)(1) (DEEP may "direct an electric distribution company to offer, through an electric supplier or electric suppliers, one or more alternative standard service options"); Conn. Gen. Stat. § 16-245m(d)(1) (DEEP may "approve, modify or reject" conservation and load management plan submitted by EDCs, which are then bound by the plan). Furthermore, for the statute at issue, there is no question. DEEP does not have a duty or authority to enforce utility franchise requirements under Title 16, like Section 16-244gg; that duty belongs to PURA. Conn. Gen. Stat. § 22a-2d(a) (DEEP's own enabling statute establishes that PURA

is "responsible for *all* matters of rate regulation for public utilities and regulated entities *under title 16*") (emphases added). And because DEEP does not have a particular duty or authority to enforce Section 16-244gg, its former (and current) Commissioner, too, is an improper *Ex parte Young* defendant.

### 2. The *Ex parte Young* exception does not apply to the PURA Commissioners because the EDCs fail to allege that PURA is enforcing, or credibly threatening enforcement of, Section § 16-244gg against them.

The Attorney General, Consumer Counsel, and former DEEP Commissioner are not proper *Ex parte Young* defendants.[12] And though PURA has a duty to enforce Section 16-244gg as part of its duty to ensure electric distribution companies comply with Title 16, the PURA commissioners are also not proper *Ex parte Young* defendants. This is because the EDCs have failed to allege facts suggesting that they intend to leave ISO-NE while retaining ownership or control of transmission facilities in Connecticut, and only those facts could create the credible and specific threat that PURA will enforce Section 16-244gg against them necessary to invoke *Ex parte Young*.

#### a. The EDCs allege no facts suggesting they are leaving, or intend to leave, ISO-NE while owning or controlling transmission facilities, and this is the only circumstance that could trigger a credible and specific threat of Section 16-244gg enforcement and so implicate *Ex parte Young*.

In *Whole Woman's Health*, Justice Thomas noted in dissent that *Ex parte Young* permits "a party subject to imminent threat of state enforcement proceedings" to seek an injunction "prevent[ing] state officials from bringing an action to enforce a state law that is contrary to federal law." 595 U.S. at 53 (Thomas, J., concurring in part and dissenting in part). He observed that *Ex parte Young* applies "only when the defendant 'threaten[s] and [is] about to commence proceedings,'" *id.* at 56 (quoting *Ex parte Young*, 206 U.S. at 156), which the Court's "later cases explain [means] that 'the prospect of state suit

[12] Indeed, these three officials have none of the powers, relative to Section 16-244gg, that the Second Circuit has recognized as examples of enforcement authority. *E.g.*, *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 99 (2d Cir. 2002) (state agency with enforcement duty and authority had power to monitor individual assessing units, "remove assessors, impose penalties upon assessors, and order assessors to comply with its directives"); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 373 (2d Cir. 2005) (state officials' "significant responsibilities overseeing the Fund -- including the approval of submitted claims -- create the requisite connection to the illegal act," where alleged illegal act was officials refusing to accept plaintiff's claims against the Fund).

must be imminent,'" *id.* at 56-57 (quoting *Morales* v. *Trans World Airlines, Inc.*, 504 U. S. 374, 382 (1992)). For *Ex parte Young* to apply then, plaintiffs must "show at least a credible and specific threat of enforcement to . . . assess some [] penalty under [the challenged law.]" *Id.* at 57. "[I]t is not enough that [plaintiffs] 'feel inhibited' because [the law] is 'on the books.'" *Id.* (quoting *Younger* v. *Harris*, 401 U.S. 37, 42 (1971)). "Nor is a 'vague allegation' of potential enforcement permissible." *Id.* (quoting *Boise Artesian Hot & Cold Water Co. v. Boise City*, 213 U.S. 276, 285 (1909). *Ex parte Young* just does not apply to state officials who possess the requisite enforcement authority when "the chance of them using it is, at present, entirely 'imaginary' or 'speculative.'" *Id.* (quoting *Younger*, 401 U.S. at 42).

The *Whole Woman's Health* plurality "agree[d] with all of these principles" discussed by Justice Thomas; its "disagreement [was] restricted to their application." *Id.* at 46.[13] In particular, the plurality noted that, as Justice Thomas explained in detail, plaintiffs "must show at least a credible threat of such an [enforcement] action against them" by an official with enforcement authority. *Id.* at 47 (and "[a]gain . . . agree[ing] with these observations in principle and disagree[ing] only on their application to the facts of this case"). But the plurality held that the plaintiffs in *Whole Woman's Health* had alleged facts establishing that threat sufficient to survive a motion to dismiss because they "have plausibly alleged that [the challenged law] has already had a direct effect on their day-to-day operations" by alleging effects caused by feared enforcement across five different paragraphs of their complaint. *Id.*

The principles discussed in *Whole Woman's Health* help explain why "[t]he Second Circuit has allowed plaintiffs to invoke the *Ex parte Young* exception to the Eleventh Amendment bar on federal court jurisdiction where state officials are *actively violating* federal law or *imminently threatening acts* that the plaintiff challenges as unconstitutional." *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands &*

---

[13] Justice Thomas dissented only from Section II-C of the opinion in *Whole Woman's Health*, and that section of the opinion (which is quoted here) was joined in full by Justices Gorsuch, Alito, Kavanaugh, and Barrett in the majority and at least partially endorsed by Justices Roberts, Sotomayor, Breyer, and Kagan in separate opinions both concurring and dissenting with the main opinion. *See Whole Woman's Health*, 595 U.S. at 48 ("[E]ight Members of the Court agree sovereign immunity does not bar the petitioners from bringing this pre-enforcement challenge in federal court."). There is thus at least a majority (the plurality and Justice Thomas) supporting the *Ex parte Young* principles discussed here.

*Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009) (collecting cases, emphases added); *Healthnow*, 739 F.Supp. 2d at 294 (stating same). "[T]he doctrine 'allows a suit for injunctive [or declaratory] relief *challenging the constitutionality of a state officials' actions in enforcing state law*.'" *Goodspeed*, 632 F.Supp. 2d at 188 (emphasis in original, quoting *W. Mohegan Tribe & Nation v. Orange Cty.*, 395 F.3d 18, 21 (2d Cir. 2004)).[14]

And these principles also help explain why *Ex parte Young* does not permit suit where the plaintiff "has made no allegation that the [state official] is pursuing a[n] . . . [enforcement] action against it or that the [challenged law] compels [plaintiff] to take certain actions," instead "merely claim[ing] that the [state official] *could* act under the [challenged law] should [plaintiff] choose to [violate it], and [plaintiff] wants a ruling on the applicability of those state statutes before taking any action." *Id.* (emphasis in original); *see Morales*, 504 U.S. at 381-82 ("[T]he prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury. . . . [A] conjectural injury cannot warrant equitable relief."; *Ex parte Young* applied where defendants "had made clear that they would seek to enforce the challenged portions of the guidelines . . . through suits under their respective state laws").

A plaintiff cannot then, establish "the second prong" of *Ex parte Young*—that the sued official has "demonstrated the requisite 'willingness to exercise that [enforcement] duty'" and thus created a specific and credible threat of enforcement—without pleading facts showing that the official is "taking

[14] Indeed, the Second Circuit implicitly recognized the specific and credible threat principle in one of its most recent *Ex parte Young* cases, *Walden*. There, the challenged law forbid including the words "Independence" or "Independent" in the name of certain political organizations, *Walden*, 153 F.4th at 125 (internal quotation marks omitted), plaintiff alleged that he wished to run for mayor of New York City and create a political organization likely subject to the law called the "Independence Party" to nominate him, *id.* at 126 (same), and plaintiff alleged that he was harmed by the "anticipated rejection of his nominating petitions" because the law "prevented him from effectively organizing and conducting a petitioning campaign to gain access to the ballot," *id.* at 131 (same). A suit against the state officials with authority to determine whether the naming requirements applied to plaintiff's political organization, where plaintiff also alleged that he wanted to do the action that the state law forbid, thus satisfied *Ex parte Young's* threat requirement, both because the officials took actions "undermin[ing] their claim of an unwillingness to enforce the law against [plaintiff]" and because the officials sued were charged with interpreting the challenged law, had interpreted it to apply to plaintiff's organization, and that position controlled the enforcement activities of subordinate state officials. *Id.* at 133-34.

enforcement action" or has the "intention to do so" against the plaintiff. *See Healthnow*, 739 F.Supp. 2d at 295-96 (quoting *Ex parte Young*, 209 U.S. at 161); *see Lan Lan Wang v. Pataki*, 396 F. Supp. 2d 446, 454 (S.D.N.Y. 2005) (dismissing claim on Eleventh Amendment grounds; although plaintiffs "ha[d] suggested that the Attorney General might, at some future date, commence criminal proceedings against [them]," those allegations "fail because a wholly speculative threat of future prosecution is not actionable"). When "a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute," *Healthnow*, 739 F.Supp. 2d at 294 (quoting parenthetically, internal quotation marks omitted, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)), "[w]hat we have here is not action, but inaction, and Young does not apply," *id.* at 296 (same, at 1416).

Here, the EDCs allege that they are "transmission-owning members of ISO-NE." AC ¶ 56. They thus currently comply with Section 16-244gg, in that they are electric distribution companies that both "own and control transmission facilities" in Connecticut and participate in ISO-NE. Conn. Gen. Stat. § 16-244gg(b). To establish a specific and credible threat of enforcement, then—such that PURA has a *demonstrated* willingness to enforce Section 16-244gg against them and assess "some [] penalty" under it, *Whole Woman's Health*, 595 U.S. at 57 (Thomas, J., concurring in part and dissenting in part)—the EDCs must allege facts suggesting that they intend to (1) remain electric distribution companies, (2) continue to own or control Connecticut transmission facilities, and (3) end their participation in ISO-NE. PURA's duty to enforce Section 16-244gg is only triggered in those circumstances, and only in those circumstances could it act to enforce Section 16-244gg.

Yet the EDCs have not alleged any facts suggesting that they intend to terminate their participation in ISO-NE while retaining ownership or control of Connecticut transmission facilities now. And they have not alleged that PURA (or any other Defendant agency) is now enforcing or threatening to enforce Section 16-244gg against them. They have not even alleged that fear of Section

16-244gg enforcement has had any direct effect on their day-to-day operations or their conduct, instead only speculating that such effects could occur in the future if they one day choose to leave ISO-NE. *See, e.g.,* AC ¶ 89 ("If Plaintiffs cannot withdraw from ISO-NE voluntarily, they cannot act to protect themselves from adverse impacts" in the future).[15] The EDCs have thus failed to allege facts suggesting that they are under a credible and specific threat of Section 16-244gg enforcement by PURA, or even that Section 16-244gg has affected their conduct or operations. So, they have failed to establish that PURA has a demonstrated willingness to enforce Section 16-244gg against them, failed to establish that the PURA Commissioners are engaged in an "ongoing violation of federal law," and so not met their burden of establishing that *Ex parte Young* applies to the PURA Defendants here. *Chrysafis*, 534 F. Supp. 3d at 287; *see id.* at 288 ("'*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.'" (quoting parenthetically *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015))).

And though "threat of a future violation may be sufficient to invoke the *Ex parte Young* exception," that theory does not work here either. *Riccio v. Examsoft Worldwide, Inc.*, No. 3:24-cv-955 (VAB), 2026 U.S. Dist. LEXIS 194548, at *21 (D. Conn. Aug. 28, 2026) (collecting cases). For a future enforcement threat to satisfy *Ex parte Young*, "a plaintiff generally has to allege a likelihood that it will be subjected to a similar violation in the future." *Id.* at *22 (collecting cases). Here, the EDCs have alleged no facts indicating an intention ever to leave ISO-NE while continuing to own or control transmission facilities in Connecticut. They allege several facts about their *right* to leave ISO-NE on

[15] The closest the EDCs come to alleging a direct effect from actual or feared enforcement of Section 16-244gg is when they claim that the law, by existing, is "substantially impairing Plaintiffs' ability to obtain the full return on equity to which it is entitled and upon which it relies for investment capital to maintain and improve transmission infrastructure and ensure system reliability." AC ¶ 122. This allegation, though, appears to refer to the potential loss of the EDCs' RTO Adder at FERC. As explained below, the FERC Complaint proceeding does not constitute enforcement for *Ex parte Young* purposes, so this allegation does not establish a direct effect from actual or feared enforcement of Section 16-244gg. And in any event, this allegation is a nonspecific assertion lacking any specific facts about what action of the PURA Defendants is causing this effect, how that action is part of PURA's enforcement of Section 16-244gg, or what "substantial impair[ment]" means or how any impairment actually affects the EDCs' ability to obtain investment capital. So, it is insufficient to support an *Ex parte Young* argument here.

certain terms contained in the TOA. AC ¶¶ 58-65; AC ¶ 66 ("[W]hile Plaintiffs have not withdrawn from ISO-NE, they maintain the right to do so under the TOA that is on file with FERC"). But they allege nothing about whether they are likely to exercise that right now or in the future. There is thus no "plausible basis to infer" that the EDCs are "likely to experience" a violation of their constitutional rights in the future based on PURA's enforcement of Section 16-244gg, and so there is no basis to apply *Ex parte Young* to the PURA commissioners here based on a future violation theory. *Riccio*, 2026 U.S. Dist. LEXIS 194548, at *22-23.

**b. Filing a Section 206 petition at FERC is not enforcing Conn. Gen. Stat. § 16-244gg under *Ex parte Young*.**

As the EDCs' allegations about DEEP being the lead complainant in the FERC Complaint suggest, the EDCs filed this case to undercut Defendants' FERC Complaint. AC ¶ 32. The EDCs allege that the FERC Complaint asks FERC to take notice of Section 16-244gg's mandatory ISO-NE participation requirement and remove the EDCs' RTO Adder based on federal ratemaking law standards. AC ¶¶ 77-78; *see* AC at pp. 40-62 (copy of FERC Complaint). A state official's request that FERC exercise its own independent federal regulatory authority based on the existence of a state law, however, does not demonstrate that the official (1) has the particular duty and authority to enforce the requirements of the state law itself, and (2) is exercising or likely to exercise that authority as required by that duty in a way that creates a specific and credible threat of enforcement. The latter status is what matters for *Ex parte Young* purposes here because the EDCs allege that the enforcement of Section 16-244gg is unconstitutional and ask this Court to enjoin its enforcement, AC at p. 36, rather than alleging that the Defendants' filing of the FERC Complaint is somehow a violation of federal law that must be enjoined.

This distinction—between coercive enforcement of the challenged state law and advising or advocating that another entity act based on the existence of the law—has its roots in *Ex parte Young*. There, the Supreme Court recognized an exception to a state official's sovereign immunity only when

that official threatened and was about to commence proceedings "to enforce against parties affected an unconstitutional act." *Ex parte Young*, 209 U.S. 123 at 156. In recognizing this exception, the Court held that the Minnesota Attorney General had "the right and the power to enforce the statutes of the State" and both a statutory and common law "duty of enforcement" as to the challenged act. *Id.* at 161. In those circumstances, a federal court could enjoin the unconstitutional enforcement action: a state official attempting to coerce the affected party to comply with an unconstitutional state law *via the exercise of state authority granted to the official to enforce the law*—in *Ex parte Young*, by threatened prosecution. *Id.*

Though courts in the Second Circuit do not appear to have clearly defined enforcement in the *Ex parte Young* context, these roots are why other courts "have defined enforcement" under *Ex parte Young* "as compulsion or constraint, so [i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation" and *Ex parte Young* does not apply. *Book People, Inc. v. Wong*, 91 F.4th 318, 335 (5th Cir. 2024) (internal quotation marks omitted). This definition explains why several courts have found that *Ex parte Young* does not apply to state officials who engage in activity related to a state law that does not rise to the level of coercing or compelling an entity to comply with it. For example:

- The Ninth Circuit held that *Ex parte Young* did not apply to an attorney general who "shall consult with, advise, and direct the district attorneys" in certain criminal cases, but who could not himself bring a prosecution under the challenged act, where "his opinion might be persuasive" but is not binding on the district attorneys, the actors who would actually compel compliance with the challenged law. *S. Pac. Transp. Co. v. REDDEN*, 651 F.2d 613, 614-15 (9th Cir. 1980); *cf. Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919-20 (9th Cir. 2004) (*Ex parte Young* applied where attorney general could "assist county prosecutors in a collaborative effort, but may not assert[] dominion and control over prosecutions against the county prosecutor's wishes," because absent county prosecutor objection attorney general could "*do every act* that the county attorney can perform" and thus directly enforce compliance with challenged law through prosecution (internal quotation marks omitted, emphasis in original)).

- The Fifth Circuit held that *Ex Parte Young* did not apply to a state official with a statutory duty to refer certain persons for prosecution because the referral itself was not a coercive

act: "the referral of information regarding a potential or actual violation of the statutes at issue to a prosecuting attorney does not effectuate a prosecution. The prosecuting attorney would decide whether to prosecute," prosecuting attorneys have "the absolute discretion to file charges to enforce" the law and so the state official's referring of information to them is not enforcement that could be enjoined. *La Union Del Pueblo Entero v. Nelson*, 163 F.4th 239, 266-67 (5th Cir. 2025) (internal quotation marks omitted).

- The Fifth Circuit held that a state official's "[o]ffering advice, guidance, or interpretive assistance to local officials does not constitute enforcement," even when that advice includes "interpretive guidance" about the challenged state law offered to the local officials with exclusive authority to then enforce the challenged law, because the local officials have "absolute discretion in exercising that enforcement power" and the advising state official "does not directly enforce" the challenged laws. *Ostrewich v. Tatum*, 72 F.4th 94, 100-01 (5th Cir. 2023) (internal quotation marks omitted).

- The Fourth Circuit held that "[s]imply advising other departments does not give the Attorney General control over *enforcing* the Act," and even when the Attorney General "may present [a] case on behalf of the Board at a hearing initiated by the Board," the "decision of whether to *commence* a hearing rests with the Board," so *Ex parte Young* does not apply to the attorney general because he does not exercise the necessary control authority. *Doyle v. Hogan*, 1 F.4th 249, 256 (4th Cir. 2021) (emphases in original, internal quotation marks omitted).

Several circuits have thus recognized and applied the *Ex parte Young* distinction between a state official wielding coercive authority to compel compliance with a state law and a state official merely advising, directing, assisting, or advocating for a certain result under a state law to the entity that may exercise independent decision-making and coercive authority to compel obedience with the state law. Only state officials in the former situation satisfy *Ex parte Young* and permit plaintiffs to circumvent state sovereign immunity. This discussion illustrates two independently sufficient reasons that the EDCs cannot rely on the FERC Complaint to invoke *Ex Parte Young* here.

First, the FERC Complaint does not seek to compel, and cannot compel, the EDCs to obey the state law challenged here: Section 16-244gg. The FERC Complaint is brought pursuant to Sections 206 and 306 of the FPA, 16 U.S.C. §§ 824e, 825e, and seeks transmission rate relief based on federal law. AC at pp. 40-41. FERC is a federal agency with no jurisdiction over Connecticut electric distribution company local franchise requirements under Connecticut law and thus no power to

enforce Section 16-244gg itself. *See Transmission Access Pol'y Study Grp. v. FERC*, 225 F.3d 667, 694 (D.C. Cir. 2000) ("Just as FPA § 201 [16 U.S.C. § 824] gives FERC jurisdiction over transmissions in interstate commerce and sales at wholesale, the statute also clearly contemplates state jurisdiction over local distribution facilities and retail sales."), *aff'd sub nom., N.Y. v. FERC,* 535 U.S. 1 (2002).

Further, the FERC Complaint asks FERC to exercise its federal ratemaking authority under Section 206 to find the EDCs' existing wholesale transmission rates unjust and unreasonable because they include the RTO Adder notwithstanding Section 16-244gg, and to then set a replacement wholesale transmission rate for the EDCs that does not include the RTO Adder. *See* AC ¶¶ 53-54.[16] The Defendants' filing of the FERC Complaint has nothing to do with whether Defendants (1) have the requisite duty and authority to enforce Section 16-244gg and (2) have exercised or threatened to exercise that authority against the EDCs, such that the EDCs can invoke *Ex parte Young* against them.

Second, even if FERC were the correct kind of entity under *Ex parte Young* (it is not), and even if FERC's act of adjusting a federal wholesale transmission rate could be construed as enforcement of Section 16-244gg (it cannot), the Defendants' act of filing a complaint with FERC could not establish the *Ex parte Young* exception here. The Defendants filed the FERC Complaint under FPA Section 306, which permits "[a]ny person, electric utility, State, municipality, or State commission" to complain to FERC about any act or omission of a public utility "in contravention of the provisions" of the FPA. 16 U.S.C. § 825e.[17] Exercising a federal statutory right available to "any person" is not an enforcement act that could establish an *Ex parte Young* exception to state sovereign immunity. And FERC, not Connecticut, will decide the fate of that complaint. FERC is the only entity that can adjudicate an FPA

---

[16] *See Dayton Power & Light Co. v. FERC*, 126 F.4th 1107, 1132 (6th Cir. 2025) ("Under Section 206, whenever FERC 'find[s] that any rate, charge, or classification,' or 'any rule, regulation, [or] practice' is 'unjust, unreasonable, unduly discriminatory or preferential,' it 'shall determine the just and reasonable' rate, charge, rule, or practice and 'shall fix [it] by order.'" (quoting 16 U.S.C. § 824e(a)).

[17] Rule 206 of FERC's Rules of Practice and Procedure also provides that "[a]ny person may file a complaint seeking Commission action against any other person alleged to be in contravention or violation of any statute, rule, order, or other law administered by the Commission." 18 C.F.R. § 385.206(a).

complaint alleging that a wholesale transmission rate is unjust or unreasonable and, if it so finds, FERC is the only entity that must then set "the just and reasonable rate . . . to be thereafter observed and in force and . . . fix the same by order." 16 U.S.C. § 824e(a) The EDCs can and have argued in the FERC Complaint proceeding that the Act is federally preempted and thus unconstitutional.[18] FERC will adjudicate the Complaint and address whether the EDCs are entitled to continue to include the RTO Adder in their FERC-jurisdictional transmission rates. The Plaintiffs can thereafter seek judicial review of FERC's order in a United States Court of Appeals. 16 U.S.C. § 825*l*(b). Nothing Defendants or their agencies have done before FERC in the Complaint proceeding places Defendants within the narrow exception of *Ex parte Young*.

"[C]ourts have not read Ex parte Young expansively." *HealthNow N.Y.*, 739 F. Supp. 2d at 294. This Court should decline to expand *Ex parte Young* to subject state officials to suit when they ask an independent federal agency to provide federal rate relief based on a change in state law. Defendants are referring information to FERC about Section 16-244gg's impact on existing wholesale transmission rates based on the governing law, advising FERC on how it ought to use its ratemaking authority given that information, and seeking to persuade FERC, the entity with enforcement authority, to use that authority in a certain way. These kinds of actions are not Section 16-244gg enforcement activities that could trigger *Ex parte Young* against Defendants.

**B. The EDCs lack standing to bring their claims.**

Under Article III of the U.S. Constitution, the judicial power of the federal courts "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "To satisfy Article III's standing requirement, [plaintiffs] must show: (1) an injury-in-fact, (2) that is fairly traceable to the . . . defendants' alleged actions, and (3) a non-speculative likelihood that the injury can be remedied

[18] *See* Motion to Dismiss and Answer of The Connecticut Light and Power Company and The United Illuminating Company, *Conn. Dep't of Energy & Env't Protection v. ISO New England Inc.,* Docket No. EL26-79 (July 1, 2026), eLibrary No. 20260701-5334.

by the requested relief." *Walden*, 153 F.4th at 131 (internal quotation marks omitted). The EDCs "bear[] the burden of establishing these elements." *Spokeo*, 578 U.S. at 338. And at the pleading stage, as here, they "must clearly . . . allege facts demonstrating each element." *Id.* (internal quotation marks omitted); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (plaintiff must allege "facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." (internal quotation marks omitted)). The EDCs identify two injuries in the Amended Complaint. First, they allege that Section 16-244gg's requirements injured them when it was enacted, "through the uncompensated confiscation of their right to terminate membership in the ISO-NE RTO and the concomitant permanent loss of their property rights." AC ¶ 21. Second, they allege that the FERC Complaint places their "rates and operations under immediate and continuing threat." AC ¶ 21. Neither of these alleged injuries provide standing here.

**1. The alleged injury arising from Section 16-244gg's requirements is not traceable to the non-PURA Defendants because they have no enforcement authority, and any injunction against the non-PURA Defendants would thus not remedy this alleged injury.**

"A plaintiff has standing only if he can allege personal injury fairly traceable to the defendant's allegedly unlawful conduct." *California v. Texas*, 593 U.S. 659, 668–669 (2021) (internal quotation marks omitted). The EDCs' first alleged injury—harm to their statutory FPA rights, contractual TOA withdrawal rights, and transmission facility property rights from Section 16-244gg's requirement that they participate in ISO-NE if they wish to continue as electric distribution companies that own transmission facilities—must thus arise from some conduct of each Defendant for that injury to be traceable to that Defendant. *See Kellogg v. Nichols*, 170 F.4th 20, 26 (2d Cir. 2025) ("plaintiffs must demonstrate that [courts] have Article III jurisdiction over each claim that they press and for each form of relief that they seek," and EDCs here seek an injunction against each Defendant (internal quotation marks omitted)).

Here, though, the EDCs' first alleged injury must stem from enforcement of Section 16-244gg by a Defendant; enforcement, or threatened enforcement, by a Defendant is the only action that could instantiate Section 16-244gg's requirements as to the EDCs, cause the harms they allege, and arise from some conduct of a Defendant. "That is why a litigant seeking to enjoin the enforcement of a statute on constitutional grounds ordinarily sues the enforcement official authorized to bring suit under the statute." *Kellogg*, 170 F.4th at 26. Indeed, several courts have recognized that in a pre-enforcement challenge to a statute's constitutionality, the traceability requirement is not satisfied unless the named defendants have authority to enforce the statute. *Dig. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (Where state officials "do not have authority to enforce the [challenged law], . . . they do not cause injury to [plaintiff]"); *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 423 (S.D.N.Y. 2022) ("'[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.'" (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007) (collecting cases))). The EDCs' suit is a pre-enforcement challenge "because, at this point, the [EDCs] continue[] to comply with [Section 16-244gg]," and no enforcement proceeding has been opened or threatened. *State of Conn. v. Spellings*, 453 F. Supp. 2d 459, 482 (D. Conn. 2006).

As discussed above, only the PURA Commissioners have any authority to enforce Section 16-244gg, so only their threatened or actual enforcement conduct could (if it were alleged, which it is not) be traced to the EDCs' first alleged injury. Any alleged injury arising from enforcement of Section 16-244gg is thus not traceable to any conduct of the Consumer Counsel, former DEEP Commissioner, or Attorney General. Beyond traceability, "[i]n pre-enforcement challenges, such as the present action, the second and third requirements for standing—causation and redressability—are often flip sides of the same coin." *Walden*, 153 F.4th at 131 (internal quotation marks omitted). If a state official has no

authority to enforce a statute, then any injunction restraining that official from enforcing that statute does not remedy any injury arising from current or future enforcement; those officials cannot engage in the conduct causing the injury. The EDCs' first alleged injury does not, then, provide standing for their claims against the non-PURA Defendants.

**2. The alleged injury arising from Section 16-244gg's requirements is not an Article III injury-in-fact because the EDCs have not alleged a sufficiently imminent and substantial risk of harm arising from their intention to engage in the conduct that Section 16-244gg prohibits.**

The EDCs' first alleged injury also does not establish their standing to sue the PURA Defendants because it is not an actual or imminent injury-in-fact. "Where, as here, plaintiffs seek injunctive or declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future." *Dorce v. City of N.Y.*, 2 F.4th 82, 95 (2d Cir. 2021) (internal quotation marks omitted). "Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (internal quotation marks omitted); *Silva v. Farrish*, 47 F.4th 78, 86 (2d Cir. 2022) ("risk of harm" must be "sufficiently imminent and substantial" (internal quotation marks omitted)). And in a pre-enforcement suit seeking prospective relief against government officials, "the future injury asserted . . . must be the result of a statute's actual or threatened enforcement." *Walden*, 153 F.4th at 131. Thus, plaintiffs in a pre-enforcement suit must establish the required injury-in-fact by demonstrating "(1) an intention to engage in a course of conduct arguably affected with a constitutional interest; (2) that the intended conduct is proscribed by the challenged law; and (3) that there exists a credible threat of prosecution thereunder." *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (internal quotation marks omitted); *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) ("a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a

statute, and there exists a credible threat of prosecution thereunder" (internal quotation marks omitted)).

Here, the EDCs fail to allege any facts that, even in the light most favorable to them, establish that they are likely to be injured by actual or credibly threatened enforcement of Section 16-244gg, now or in the future. Section 16-244gg created a simple requirement for Connecticut electric distribution companies that own or control transmission facilities in Connecticut: they must participate in ISO-NE or a successor RTO. Conn. Gen. Stat. § 16-244gg(b). The only course of conduct arguably proscribed by Section 16-244gg, then, is for the EDCs to cease participating in ISO-NE or its successor while retaining both (1) ownership or control of Connecticut transmission facilities and (2) their statuses as Connecticut electric distribution companies. As discussed above, the EDCs do not allege any facts suggesting that they intend to ever do this. Without allegations that they intend to engage in the conduct prohibited by Section 16-244gg, now or in the near future, the EDCs cannot establish an imminent or substantial injury-in-fact to support their pre-enforcement challenge to Section 16-244gg. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992) ("'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require"(emphasis in original)). There is simply no allegation in the Amended Complaint remotely like those courts in the Second Circuit, including the Second Circuit itself, have found sufficient to establish standing in this posture.[19]

---

[19] *E.g.*, *Vitagliano*, 71 F.4th at 137 (pre-enforcement injury-in-fact existed where plaintiff "included in her complaint descriptions of the origin of her desire to become a sidewalk counselor, the steps she took to train and prepare to serve as a sidewalk counselor, the abortion clinic outside which she intends to provide sidewalk counseling, and the approach she plans to take when having sidewalk-counseling conversations," establishing that she would engage in sidewalk counseling but for the enactment of the challenged law); *Silva*, 47 F.4th at 87 (same where plaintiffs allege an intention to engage in a course of conduct arguably protected by federal law but proscribed by state law, that "they would fish if they did not fear prosecution" under "state fishing regulations"; plaintiffs alleged credible threat of prosecution based on history of "fines and enforcement proceedings for violating the fishing regulations"); *Goldstein*, 680 F. Supp. 3d at 387 (same where "Plaintiffs have included descriptions of why they wish to carry firearms into shul, their history of carrying firearms into shul, and copies of their firearm licenses" and "[t]his is sufficient to establish Plaintiffs' intention to carry a firearm into

To be sure, "where threatened action by government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). And a plaintiff need not establish "an intent by the government to enforce the law against it." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019). But a plaintiff must still allege that they *wish to engage* in the conduct arguably proscribed by statute and plead facts establishing that there is a *credible threat of enforcement* if the plaintiff engages in that conduct. The EDCs do neither of those things here. Essentially, for their first injury, they allege that Section 16-244gg exists and, though it currently preserves the status quo that has existed since ISO-NE became an RTO and the EDCs have no current or future intention of doing the action the law forbids, they are injured by the law's existence. *See* AC ¶ 21 (alleging they were injured "[f]rom the moment the RTO requirement took effect"). This kind of allegation is insufficient to establish an injury-in-fact for their claims for injunctive and declaratory relief against the PURA Defendants.

And even if the EDCs could establish an injury-in-fact based on their first alleged injury, the EDCs have alleged no facts about how PURA's *conduct* caused this first injury, so any injury is not traceable to PURA. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury *resulting from the defendant's conduct* may suffice." (emphasis added)); *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("In order to meet the constitutional minimum of standing to seek injunctive relief, [plaintiff] must carry the burden of establishing that he has sustained or is immediately in danger of sustaining some direct injury *as the result of the challenged official conduct*." (internal quotation marks omitted, emphasis added)).

shul 'but for' the enactment of the [law]"); *Avitabile v. Beach*, 277 F. Supp. 3d 326, 331-32 (N.D.N.Y. 2017) (same where plaintiff "publicly announced his own desire to purchase and possess such a weapon for self-defense purposes in his own home, conduct that would be likely to result in his prosecution" by a sued state official (internal citations omitted)).

### 3. Any injury arising from the FERC Complaint is not traceable to any Defendant because FERC's exercise of independent, uncoerced judgment breaks the chain of causation.

That leaves the EDCs' second alleged injury to support all their claims: that Defendants' agencies' filing of the FERC Complaint caused the EDCs an injury-in-fact traceable to the Defendants by placing their "rates and operations under immediate and continuing threat" in the proceeding at FERC. AC ¶ 21; *see* AC ¶ 122 (Section 16-244gg will "substantially impair[] Plaintiffs' ability to obtain the full return on equity to which it is entitled"). But this theory has a fatal flaw. FERC, an independent federal regulator, is the entity that will decide whether the EDCs' wholesale transmission rates will change based on the enactment of Section 16-244gg. And FERC will do so in a Section 206 proceeding where the Defendants' agencies bear the burden of showing that the existing rate is unjust and unreasonable. While Defendants have informed FERC about Section 16-244gg and are advocating for a certain result, FERC possesses the exclusive jurisdiction to adjudicate, and will independently decide, Section 16-244gg's impact on the EDCs' wholesale transmission rates. This intervening independent decision by FERC makes any resulting injury not traceable to Defendants and prevents the EDCs from relying on their second alleged injury to establish standing.

Generally, an injury that is "the result [of] the independent action of some third party not before the court" will not establish standing because that injury is not "fairly . . . trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. at 560. Of course, "[i]n order to satisfy the traceability element of standing, a plaintiff need not show that the 'defendant's actions are the very last step in the chain of causation.'" *Walden*, 153 F.4th at 131 (quoting *Bennett v. Spear*, 520 U.S 154, 169 (1997)). But when a third party exists in the chain of causation and inflicts the injury, a plaintiff must establish causation by showing that the defendant induced the injury "by determinative or coercive effect upon the action of" the third party. *Id.* (quoting *Bennett*, 520 U.S. at 169); *see Carver v.*

*City of N.Y.*, 621 F.3d 221, 226 (2d Cir. 2010) (standing "causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation").

Here, the EDCs allege that Defendants' agencies filed the FERC Complaint under Section 206 of the FPA "request[ing] that FERC revoke Plaintiffs' RTO Adder." AC ¶14. But they plead that under Section 206, "FERC reviews and approves the rates" for transmission facility owners, "together with the terms and conditions of service," to ensure they are "just and reasonable." AC ¶ 42 (citing 16 U.S.C. §§ 824d, 824e). And they plead that in a Section 206 proceeding, the challenging parties (here, the Defendants' agencies) bear the burden "to demonstrate that the existing rates or service terms are no longer just and reasonable," and that "before FERC can reject or change an existing rate or service term, it must find that such rates are not 'just and reasonable.'" AC ¶ 43. It is FERC that ultimately will review the FERC Complaint and independently determine whether the FERC Complaint establishes that the EDCs' existing wholesale transmission rate is not just or reasonable and, if it does, what the new just and reasonable rate is going forward. 16 U.S.C. § 824e(a). After all, "[i]t is the Commission's job—not the petitioner's—to find a just and reasonable rate." *Firstenergy Serv. Co. v. FERC*, 758 F.3d 346, 353 (D.C. Cir. 2014) (internal quotation marks omitted). Yet the EDCs' own pleading demonstrates that the FERC Complaint starts an administrative process where Defendants' agencies bear the burden of establishing that the rate they challenge is no longer appropriate, and so the EDCs' allegations about the proceedings at FERC do not demonstrate—and could not demonstrate—that Defendants' FERC Complaint exerts a determinative or coercive effect on FERC's ultimate decision. Quite the opposite.

Further, the EDCs have pled no other facts from which this Court could plausibly infer that the FERC Complaint could have a determinative or coercive effect on FERC's decision.[20] At the very

---

[20] *Compare Bennett*, 520 U.S. at 169-70 (standing existed where advisory opinion of sued agency had "a powerful coercive effect on the [different] action agency," including by "alter[ing] the legal regime to which the action agency is subject" and by causing action agency to "run[] a substantial risk" if the advice had been ignored) *with Nat'l Council of La Raza v. Mukasey*,

least, the EDCs must allege some facts establishing that the Defendants' FERC Complaint will have "a 'predictable effect' on the decisions of [the] relevant third part[y]," FERC, to establish "*de facto* causality" and standing based on their second alleged injury. *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 353 (2d Cir. 2023); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("Plaintiffs cannot rely on speculation about the unfettered choices made by independent actors not before the courts" to establish standing (internal quotation marks omitted)). Yet they have alleged nothing about how FERC may react specifically to the FERC Complaint and so have not "plausibly alleged a causal connection" to establish traceability for their second pleaded injury. *Ateres Bais Yaakov*, 88 F.4th at 353. Indeed, the EDCs have raised several arguments before FERC that they are entitled to continue to include the RTO Adder in their transmission rates regardless of the enactment of Section 16-244gg. Because of "the absence of any allegations supporting a reasonable inference that defendants' actions have a determinative or coercive effect on [FERC]" this court should "conclude that plaintiffs' complaint failed to plead causation by the named defendants" for their second injury. *Mukasey*, 283 F. App'x at 852.

*  *  *  *  *

"[T]hose seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments. This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health*, 595 U.S. at 49. Because the EDCs allege no facts establishing current, threatened, or likely enforcement of Section 16-244gg against them by the only entity that can enforce it, PURA, their Amended Complaint asks this Court to issue an advisory opinion on the constitutionality of a state

---

283 F. App'x 848, 852 (2d Cir. 2008) (summary order) ("plaintiffs also plead that . . . a number of state and local authorities choose not to comply with such DHS requests," but "plaintiffs do not allege that such authorities suffer any adverse consequences from this resistance," and "[u]nder these circumstances, the pleadings do not support the conclusion that defendants' actions have had a determinative or coercive effect on those state and local authorities").

law that the EDCs can then use to bolster their arguments before FERC. But Connecticut's Eleventh Amendment sovereign immunity, and Article III's case or controversy requirement, prevent this Court from doing so. This Court should dismiss this case for lack of subject-matter jurisdiction.

### C. Even if the EDCs could bring this case, there is no statutory, constitutional, or equitable basis for the EDCs to pursue their FPA preemption claims in Counts 1 and 2 in federal district court.

The EDCs attempt to bring two causes of action under the FPA and Supremacy Clause in Counts 1 and 2. As discussed above, both these counts are barred by Eleventh Amendment sovereign immunity and not justiciable. Even if this Court had jurisdiction to hear them, though, both counts fail to state a claim. In Count 1, the EDCs allege that Section 16-244gg interferes with the TOA's withdrawal provisions and that this interference is unconstitutional because "the TOA, as part of the filed rate, has the force of federal law," AC ¶ 90, under the FPA's "federal regulatory framework," AC ¶ 84. In Count 2, they allege that Section 16-244gg is field- and conflict-preempted by the FPA. AC ¶¶ 95, 102. These counts fail because there is no statutory, constitutional, or equitable basis for private actors such as public utilities to pursue FPA preemption claims in federal district court.

The EDCs purport to bring Counts 1 and 2 under Section 1983 and *Ex parte Young*. AC at pp. 22, 25. But the EDCs cannot bring these counts under Section 1983. "[A] Supremacy Clause claim based on a statutory violation is enforceable under § 1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff." *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 n.4 (1989). None of the relevant FPA provisions here create a private right for public utilities that can be enforced through Section 1983.[21]

---

[21] The relevant statutory provisions here are: the FPA's rate provisions, AC ¶¶ 83, 96 (both citing 16 U.S.C. § 824d); the FPA's provision requiring FERC to create a rule incentivizing RTO membership, AC ¶ 99 (citing 16 U.S.C. § 824s(a)-(c)); and the FPA's declaration of policy that the FPA applies to interstate transmission and wholesale energy sales, AC ¶ 103 (citing 16 U.S.C. § 824(b)(1)). None of them create a private right of action. *Pac. Gas & Elec. Co. v. Lynch*, CV 01-1083-RSWL (SHx), 2001 U.S. Dist. LEXIS 5500, at *29 (C.D. Cal. May 2, 2001) ("Congress did not intend to benefit public utilities such as Plaintiff in enacting the Federal Power Act. Consequently, Plaintiff may not assert a private right of action either directly under this Act or indirectly under § 1983."); *see Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951) (holding that FPA "is a standard for [FERC] to apply and, independently of Commission action, creates no

Further, the Supremacy Clause "does not create a cause of action" on its own. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015). The EDCs' Supremacy Clause counts must thus be brought as "an *Ex parte Young*-style equitable action." *Vill. of Old Mill Creek v. Star*, No. 17 CV 1163, 2017 U.S. Dist. LEXIS 109368, at *27 (N.D. Ill. July 14, 2017), *aff'd on other grounds sub nom.*, *Elec. Power Supply Ass'n v. Star*, 904 F.3d 518 (7th Cir. 2018), *cert. denied*, 587 U.S. 937 (2019). "The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations," however. *Armstrong*, 575 U.S. at 327. And here a limitation recognized by the *Armstrong* court prevents the EDCs from bringing Counts 1 and 2 as equitable actions.

In *Armstrong*, the Supreme Court observed that "the 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others,'" including *Ex parte Young*-style equitable actions. *Id.* at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). The FPA contains a comprehensive administrative enforcement scheme through which FERC compels compliance with the FPA. Among other things, this scheme "requires every public utility to file with FERC rates for all sales subject to FERC's jurisdiction and empowers FERC to hold hearings" and "authorizes any person to file a complaint with FERC to challenge, *inter alia*, anything done by a regulated entity in contravention of the FPA." *Coal. for Competitive Elec. v. Zibelman*, 272 F. Supp. 3d 554, 565 (S.D.N.Y. 2017), *aff'd on other grounds*, 906 F.3d 41 (2d Cir. 2018), *cert. denied sub nom.*, *EPSA v. Rhodes*, 587 U.S. 938 (2019); *see also Old Mill Creek*, 2017 U.S. Dist. LEXIS 109368, at *25 (discussing comprehensive enforcement scheme); *Lawrenceburg Power, LLC v. Lawrenceburg Mun. Utils.*, 410 F. Supp. 3d 943, 956-57 (S.D. Ind. 2019) (same). Further, the FPA empowers FERC—"in its discretion"—to bring an action in federal district court against "any person" to enforce compliance with the FPA and

right which courts may enforce"); *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 73 (1st Cir. 2017) (in discussing 16 U.S.C. §§ 824d, 824e: "the FPA resoundingly does not confer a private right").

enjoin any acts that violate it or obtain a writ of mandamus compelling compliance. 16 U.S.C. § 825m(a)-(b).

Congress afforded these explicit rights to FERC, committed exercise of them to FERC's discretion, said nothing about suits by private plaintiffs, and instead provided that private entities must seek relief for any alleged violations of the FPA from and through FERC. 16 U.S.C. §§ 824e(a), 825e.[22] Accordingly, every federal court to have squarely considered this question has concluded that "[t]he FPA tacitly forecloses private parties from invoking equity jurisdiction to challenge state laws enacted in alleged violation of the FPA because Congress implicitly provided a 'sole remedy' in the FPA—specifically enforcement by FERC." *Zibelman*, 272 F. Supp. 3d at 565.[23] The EDCs, then, "'cannot, by invoking [the Court's] equitable powers, circumvent Congress's exclusion of private enforcement'" in the FPA. *Zibelman*, 272 F.Supp. 3d at 565 (quoting *Armstrong*, 575 U.S. at 328). They thus have no cause of action in Counts 1 and 2, and so these counts, were they justiciable, would have to be dismissed for failure to state a claim.

## IV. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss the EDCs' Amended Complaint in its entirety. In the alternative, if this Court does not dismiss the entire Amended Complaint on sovereign immunity and standing grounds, then it must at least dismiss Counts 1 and 2 for failure to state a claim.

---

[22] Indeed, Congress specifically provided a "narrow private cause of action under the FPA" not applicable here. *Zibelman*, 272 F.Supp 3d at 565 (citing 16 U.S.C. § 824a-3(h)(2)(B)). "Congress's decision to create a limited private cause of action suggests that 'the omission of a general private right of action in the [FPA] should . . . be understood as intentional.'" *Id.* (quoting *Vill. of Old Mill Creek v. Star*, No. 17 CV 1163, 2017 U.S. Dist. LEXIS 109368, at *26 (N.D. Ill. July 14, 2017)).

[23] *Accord Old Mill Creek*, 2017 U.S. Dist. LEXIS 109368, at *26 ("the Federal Power Act does not authorize a private cause of action for injunctive relief"); *Lawrenceburg*, 410 F.Supp. 3d at 957 ("the FPA's comprehensive enforcement and remedial scheme indicates Congress's intention to preclude equitable relief to private parties in federal court"); *Pastoriza v. Pub. Serv. Co. of N.H.*, No. 24-cv-252-PB-TSM, 2025 U.S. Dist. LEXIS 36028, at *6 (D.N.H. Feb. 28, 2025) ("the FPA's remedial structure signals Congress's intention to foreclose private parties from invoking the court's inherent equitable power"). While the Supreme Court considered an FPA preemption claim brought in the district court post-*Armstrong*, it made clear that it was not deciding that jurisdiction to adjudicate the claim was properly in that court. *Hughes v. Talen Energy Marketing, LLC*, 578 U.S. 150, 161 n.6 (2016) ("Because neither [side] has challenged whether plaintiffs may seek declaratory relief under the Supremacy Clause, the Court assumes without deciding that they may.").

DEFENDANTS

KATHERINE S. DYKES, in her official capacity as Commissioner of the Department of Energy & Environmental Protection

*/s/ William E. Dornbos*
William E. Dornbos (ct32049)
Assistant Attorney General
165 Capitol Ave.
Hartford, CT 06106
Tel: (860) 808-5189
Fax: (860) 772-5386
william.dornbos@ct.gov
*Counsel for Katherine S. Dykes, former Commissioner of the Department of Energy & Environmental Protection*

THOMAS WIEHL, DAVID ARCONTI, JANICE BEECHER, HOLLY CHEESEMAN, and EVERETT SMITH, in their official capacities as Public Utilities Regulatory Authority Commissioners

*/s/ Joshua Britt*
Joshua P. Britt (ct31625)
Seth A. Hollander (ct28857)
Assistant Attorneys General
165 Capitol Ave.
Hartford, CT 06106
Tel: (860) 808-5052
Fax: (860) 772-1709
joshua.britt@ct.gov
seth.hollander@ct.gov
*Counsel for Public Utilities Regulatory Authority Commissioners*

CLAIRE E. COLEMAN, in her official capacity as Consumer Counsel of the Connecticut Office of Consumer Counsel

*/s/ Andrew W. Minikowski*
Andrew W. Minikowski (ct30302)
Agency Legal Director
James M. Talbert-Slagle (ct26542)
Staff Attorney
10 Franklin Sq.
New Britain, CT 06051
Tel: (860) 827-2924
Fax: (860) 827-2929
andrew.minikowski@ct.gov
james.talbert-slagle@ct.gov
*Counsel for Claire E. Coleman, Consumer Counsel of the Connecticut Office of Consumer Counsel*

WILLIAM TONG, in his official capacity as Attorney General of the State of Connecticut

*/s/ John Wright*
John S. Wright (ct13348)
Caroline R. McCormack (application for admission forthcoming)
Assistant Attorneys General
10 Franklin Sq.
New Britain, CT 06051
Tel: (860) 827-2684
Fax: (860) 808-5593
john.wright@ct.gov
caroline.mccormack@ct.gov
*Counsel for William Tong, Attorney General for the State of Connecticut*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, a copy of the foregoing was served by e-mail on all counsel of record in this action by operation of the Court's Electronic Filing System as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Joshua P. Britt*
Joshua P. Britt
Assistant Attorney General