**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

--------------------------------- X

Date: November 9, 2026

The Connecticut Light and Power Company and The United Illuminating Company,

*Plaintiffs*,

-against-

Claire E. Coleman, in her official capacity as Counsel of the Connecticut Office of Consumer Counsel; William Tong, in his official capacity as Attorney General of the State of Connecticut; Katie Dykes, in her official capacity as Commissioner of the Department of Energy & Environmental Protection; Thomas Wiehl, in his official capacity as Chair of the Office of Commissioners of the Connecticut Public Utilities Regulatory Authority; David Arconti, in his official capacity as Vice Chair of the Office of Commissioners of the Connecticut Public Utilities Regulatory Authority; Janice Beecher, in her official capacity as Commissioner of the Office of Commissioners of the Connecticut Public Utilities Regulatory Authority; Holly Cheeseman, in her official capacity as Commissioner of the Office of Commissioners of the Connecticut Public Utilities Regulatory Authority; Everett Smith, in his official capacity as Commissioner of the Office of Commissioners of the Connecticut Public Utilities Regulatory Authority,

*Defendants*.

--------------------------------- X

Dkt. No.: 3:26-cv-01034-SFR

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**


I. PRELIMINARY STATEMENT ....1

II. BACKGROUND ....2

III. STANDARD OF REVIEW ....6

IV. ARGUMENT ....7

A. Defendants Are Not Protected by Sovereign Immunity ....7

1. Defendants Are Proper *Ex parte Young* Defendants Because They Are Actively Enforcing the RTO Requirement ....9

2. All Defendants Have Sufficient Connection to the RTO Requirement ....20

B. Plaintiffs Have Standing ....27

1. An Injunction Against Defendants Would Remedy Plaintiffs' Injuries ....28

2. Plaintiffs Need Not Assert an Immediate Intent to Act in Violation of the RTO Requirement....29

3. FERC Adjudication of Defendants' Section 206 Complaint Does Not Immunize Defendants ....31

C. Plaintiffs' Causes of Action Related to the Filed Rate Doctrine and Supremacy Clause Are Not Excluded....33

V. CONCLUSION....35

CERTIFICATE OF SERVICE ....37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Cheatham*,
260 F. Supp. 3d 628 (S.D. W. Va. 2017), *aff'd*, 910 F.3d 751 (4th Cir. 2018) ..........12, 18, 19

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ..........12

*Air Transport Ass'n of Am., Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008)..........14

*Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*,
875 F.3d 64 (1st Cir. 2017)..........35

*Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*,
88 F.4th 344 (2d Cir. 2023) ..........32, 33

*Atl. City Elec. Co. v. FERC*,
295 F.3d 1 (D.C. Cir. 2002)..........34

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
968 F.2d 196 (2d Cir. 1992)..........7

*Babyrev v. Lanotte*,
No. 16 CIV. 5421 (ER), 2018 WL 388850 (S.D.N.Y. Jan. 11, 2018)..........16

*Carroll v. Trump*,
88 F.4th 418 (2d Cir. 2023) ..........35

*Carver v. Nassau Cnty. Interim Fin. Auth.*,
730 F.3d 150 (2d Cir. 2013)..........9

*Cerame v. Slack*,
123 F.4th 72 (2d Cir. 2024) ..........15

*Chevron, U.S.A., Inc. v. FERC*,
193 F. Supp. 2d 54 (D.D.C. 2002)..........31

*Chrysafis v. James*,
534 F. Supp. 3d 272 (E.D.N.Y. 2021) ..........25

*Cienega Gardens v. United States*,
331 F.3d 1319 (Fed. Cir. 2003)..........19

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ..........14

*City of Winnfield, La. v. FERC*,
744 F.2d 871 (D.C. Cir. 1984) ....................................................................................34

*Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*,
272 F. Supp. 3d 554 (S.D.N.Y. 2017).......................................................................35

*Concerned Pastors for Social Action v. Khouri*,
194 F. Supp. 3d 589 (E.D. Mich. 2016)......................................................................12

*Connecticut Dept. of Energy and Envtl. Prot. et al. v. ISO New England Inc. et al.*,
Docket No. EL26-79-000 (FERC July 16, 2026) .......................................................16

*Connecticut v. Duncan*,
612 F.3d 107 (2d Cir. 2010)..................................................................................29, 31

*Cressman v. Thompson*,
719 F.3d 1139 (10th Cir. 2013) ..................................................................................14

*CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*,
306 F.3d 87 (2d Cir. 2002).....................................................................................8, 26

*Cuomo v. N.Y. State Assembly Judiciary Comm.*,
683 F. Supp. 3d 258 (E.D.N.Y. 2023) ..........................................................................9

*In re Dairy Mart Convenience Stores, Inc.*,
411 F.3d 367 (2d Cir. 2005)..................................................................9, 21, 22, 24

*Dobbs v. Vahey*,
No. 3:25-CV-00824 (SVN), 2026 WL 295694 (D. Conn. Feb. 4, 2026) ...............................21

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
320 U.S. 591 (1944).....................................................................................................34

*Franklin California Tax-Free Trust v. Puerto Rico*,
85 F. Supp. 3d 577 (D.P.R. 2015)................................................................................21

*Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*,
632 F. Supp. 2d 185 (D. Conn. 2009)..........................................................................16

*Greater Chautauqua Federal Credit Union v. Marks*,
No. 1:22-cv-2753 (MKV), 2023 WL 2744499 (S.D.N.Y. 2023) ...............................14, 25, 26

*Greene v. Raffensperger*,
599 F. Supp. 3d 1283 (N.D. Ga. 2022) ..................................................................13, 14

*HealthNow N.Y., Inc. v. New York*,
739 F. Supp. 2d 286 (W.D.N.Y. 2010) ....................17

*Howe v. Burwell*,
No. 2:15-CV-6, 2015 WL 4479757 (D. Vt. July 21, 2015) ....................22

*HRPT Properties Trust v. Lingle*,
715 F. Supp. 2d 1115 (D. Haw. 2010) ....................19, 20, 27

*Int'l Transmission Co. v. FERC*,
988 F.3d 471 (D.C. Cir. 2021) ....................13

*Iten v. County of Los Angeles*,
81 F.4th 979 (9th Cir. 2023) ....................19, 30

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986)....................7

*KM Enterprises, Inc. v. McDonald*,
No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) ....................16

*Knick v. Township of Scott*,
588 U.S. 180 (2019)....................18, 19

*Knife Rights, Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015)....................20

*Knight v. City of New York*,
164 F.4th 173 (2d Cir. 2026) ....................29

*Lara v. Commissioner Pennsylvania State Police*,
91 F.4th 122 (3d Cir. 2024) ....................26

*Lawrenceburg Power, LLC v. Lawrenceburg Municipal Utilities*,
410 F. Supp. 3d 943 (S.D. Ind. 2019) ....................35

*Lazar v. Kroncke*,
862 F.3d 1186 (9th Cir. 2017) ....................18, 19, 21, 30

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003)....................7

*In re Letourneau*,
559 F.2d 892 (2d Cir. 1977)....................35

*Maron v. Chief Financial Officer of Florida*,
136 F.4th 1322 (11th Cir. 2025) ....................18, 30

*McDonald's Corp. v. Nelson*,
822 F. Supp. 597 (S.D. Iowa 1993), *aff'd sub nom. Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383 (8th Cir. 1994), *cert. denied*, 513 U.S. 1032 (1994) ........ 20, 32

*MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*,
222 F.3d 323 (7th Cir. 2000), *cert. denied*, 531 U.S. 1132 (2001) ........ 11

*Michigan Bell Tel. Co. v. Climax Tel. Co.*,
202 F.3d 862 (6th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Feb. 16, 2000) ........ 11

*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*,
341 U.S. 246 (1951) ........ 34

*Mulgrew v. U.S. Dep't of Transp.*,
750 F. Supp. 3d 171 (S.D.N.Y. 2024) ........ 25

*Nat'l Audubon Soc'y, Inc. v. Davis*,
307 F.3d 835 (9th Cir. 2002) ........ 16

*National Collegiate Athletic Ass'n v. Califano*,
622 F.2d 1382 (10th Cir. 1980) ........ 31

*New Orleans Pub. Serv. Inc. v. New Orleans*,
491 U.S. 350 (1989) ........ 35

*Pac. Gas & Elec. Co. v. Lynch*,
CV 01-1083-RSWL, 2001 WL 840611 (C.D. Cal. May 2, 2001) ........ 34

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) ........ 29

*Pappas v. Giuliani*,
118 F. Supp. 2d 433 (S.D.N.Y. 2000), *aff'd*, 290 F.3d 143 (2d Cir. 2002) ........ 35

*Paris v. Lara*,
145 S. Ct. 369 (2024) ........ 26

*Pastoriza v. Pub. Serv. Co. of N.H.*,
Case No. 24-cv-252-PB-TSM, 2025 WL 662935 (D.N.H. Feb. 28, 2025) ........ 35

*Prairie Band Potawatomi Nation v. Wagnon*,
476 F.3d 818 (10th Cir. 2007) ........ 12, 25

*Roman Catholic Archdiocese of New York v. Sebelius*,
907 F. Supp. 2d 310 (E.D.N.Y. 2012) ........ 31

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) ....................15

*Seneca Nation v. Hochul*,
58 F.4th 664 (2d Cir. 2023) ....................16, 18

*Sheehan v. Purolator Courier Corp.*,
676 F.2d 877 (2d Cir. 1981)....................35

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................29

*Summit Medical Associates, P.C. v. Pryor*,
180 F.3d 1326 (11th Cir. 1999) ....................16

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)....................30

*Sw. Power Pool, Inc. v. FERC*,
736 F.3d 994 (D.C. Cir. 2013) ....................29, 30

*Texas Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021)....................24

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023)....................9

*Tweed-New Haven Airport Auth. v. Tong*,
930 F.3d 65 (2d Cir. 2019)....................1, 15, 17, 33

*Van Ever-Ford v. New York*,
No. 13-CV-412, 2019 WL 1922065 (W.D.N.Y. Apr. 30, 2019)....................28

*Village of Old Mill Creek v. Star*,
No. 17 CV 1163, 2017 WL 3008289 (N.D. Ill. July 14, 2017) ....................35

*Vitagliano v. Cnty. of Westchester*,
71 F.4th 130 (2d Cir. 2023) ....................15, 30

*Walden v. Kosinski*,
153 F.4th 118 (2d Cir. 2025) ....................14, 15

*Wang v. Pataki*,
396 F. Supp. 2d 446 (S.D.N.Y. 2005)....................17

*Whole Woman's Health Alliance v. Hill*,
377 F. Supp. 3d 924 (S.D. Ind. 2019)....................22, 23, 25, 36

*Whole Woman's Health v. Jackson*,
595 U.S. 30 (2021)....................13, 15, 22

*Whole Woman's Health v. Jackson*,
No. 21-463 (U.S. Nov. 1, 2021)....................28

*Whole Woman's Health v. Jackson*,
Nos. 21-463 & 21-588 (U.S. Oct. 27, 2021)....................23

*Ex parte Young*,
209 U.S. 123 (1908).................... *passim*

**Statutes**

Conn. Gen. Stat. § 16-2a(a) ....................26

Conn. Gen. Stat. § 16-10....................27

Conn. Gen. Stat. § 22a-2d(a) ....................24

Conn. Gen. Stat. § 22a-6(a) ....................27

**Other Authorities**

*Acting Commissioner*, Conn. Dep't of Energy & Environmental Protection (June 5, 2026), https://portal.ct.gov/deep/news-releases/news-releases---2026/governor-lamont-announces-commissioner-katie-dykes-leaving-deep ....................27

*Enforce, Black's Law Dictionary* (12th ed. 2024) ....................8

*Enforce*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/enforce....................8

Ethan Howland, *Exelon, FirstEnergy utilities' RTO adder targeted by Maryland in FERC complaint*, UTILITYDIVE (July 7, 2026), https://www.utilitydive.com/news/exelon-firstenergy-ferc-maryland-rto-adder/824576/ ....................6

Ethan Howland, *New Jersey increases transmission oversight in 'affordability' push*, UTILITYDIVE (July 8, 2026), https://www.utilitydive.com/news/new-jersey-transmission-oversight-data-center-affordability-sherrill/824681/....................6

Kaitlyn Budion, *How lawmakers tried to address energy affordability this session*, MAINE MORNING STAR (Apr. 28, 2026), https://mainemorningstar.com/2026/04/28/how-lawmakers-tried-to-address-energy-affordability-this-session/ ....................6

London Econ. Int'l, *Investigating New Hampshire's Participation in ISO New England* (July 15, 2026), https://www.oca.nh.gov/sites/g/files/ehbemt711/files/documents/new-hampshire-inquiry_hb-690_final-report_2026.07.15.pdf ........ 6

Maine L.D. 2038, 132nd Legis. (2026) ........ 6

Maryann Pugh, *Pielli Bill Targets Utility Incentives as Power Costs Rise*, MYCHESCO (Oct. 2, 2026), https://www.mychesco.com/a/news/government/pielli-bill-targets-utility-incentives-as-power-costs-rise/. ........ 6

Md. HB1532/SB841 (2026) ........ 6

N.J. A2757/S1673 (2026) ........ 6

Pa. H.B. 2755, 2025-2026 Regular Session (2026) ........ 6

R.I. H.7127 (2026) ........ 6

## I. PRELIMINARY STATEMENT

Connecticut enacted Section 28 of Public Act 25-173 (the "RTO Requirement") for a single purpose: to eliminate a federally approved rate incentive (the "RTO Adder") that Plaintiffs have long received for participating in ISO New England Inc. ("ISO-NE"), the regional transmission organization ("RTO") serving New England. Connecticut officials have since invoked the statute before the Federal Energy Regulatory Commission ("FERC") seeking precisely that result. Defendants here are the same officials who continue to pursue relief before FERC based on the RTO Requirement. Yet they now insist the statute causes no present injury and that the officials relying on it lack a sufficient connection to the statute to be sued. State officials cannot invoke a statute to alter private rights in one forum (FERC) while claiming that neither the statute nor its proponents are subject to judicial review in another (this Court).

Defendants' motion turns largely on sovereign immunity. Defendants maintain that none of the officials pursuing relief under the RTO Requirement possesses the sort of connection to the statute required to be eligible for suit under *Ex parte Young*, 209 U.S. 123 (1908). At the same time, they concede that at least some defendants—the Commissioners of the Connecticut Public Utilities Regulatory Authority ("PURA") (the "PURA Defendants")—do have what they view as the requisite statutory authority. Because the PURA Defendants' statutory authority to enforce the RTO Requirement is uncontested, and Defendants do not disavow an intent to exercise it, Second Circuit precedent requires rejection of Defendants' sovereign immunity argument.[1] Moreover, sovereign immunity does not permit state officials to avoid accountability for unconstitutional laws

[1] *See Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) ("Where a statute specifically proscribes conduct, the law … does 'not place the burden on the plaintiff to show an intent by the government to enforce the law against it. Rather, it has presumed such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed.'") (citing *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)).

while they simultaneously advance those laws. Where, as here, state officials have invoked a challenged statute, sought affirmative relief under it, and continue to pursue the precise outcome the statute was enacted to achieve, they possess the connection to the statute that *Ex parte Young* requires. Defendants' conception of *Ex parte Young* would leave an unconstitutional statute with many champions but none who can be called into the ring to defend it—this is precisely the kind of result *Ex parte Young* was conceived to avoid.

For the same reasons, Plaintiffs have standing. The RTO Requirement inflicted an immediate injury when it impaired Plaintiffs' contractual and property rights by diminishing the value of their bargained-for right to withdraw from ISO-NE and conditioning continued ownership of transmission facilities on the surrender of constitutionally protected rights. That injury arose upon enactment of the statute and exists independent of any future action by FERC. Defendants compounded those injuries by invoking the statute before FERC and seeking elimination of the RTO Adder, the very outcome the statute was enacted to achieve. Those injuries are concrete, ongoing, and directly traceable to Defendants' conduct. They would be redressed by the declaratory and injunctive relief Plaintiffs seek.

Defendants' approach leaves an actively invoked statute that is currently harming Plaintiffs with no reviewable defendant and no realistic path to judicial review. Having invoked the RTO Requirement, Defendants cannot simultaneously disclaim it. The Court should deny the motion.

## II. BACKGROUND

This case concerns Connecticut's effort to eliminate Plaintiffs' federally approved RTO Adder through legislation requiring continued participation in ISO-NE. After enacting the RTO Requirement, Connecticut officials invoked that statute before FERC and continue to seek relief based on it. These facts form the foundation for both Plaintiffs' constitutional claims and Defendants' jurisdictional arguments.

Plaintiffs' RTO Adder traces directly to the creation of ISO-NE.[2] *See* Amended Complaint ("Compl.") [ECF No. 21], ¶¶ 52-54. In March 2004, FERC approved the formation of ISO-NE as an RTO, with the "rights and responsibilities" of participating transmission owners principally governed by the Transmission Operating Agreement ("TOA"). Compl., ¶ 54. As part of that approval, FERC expressly approved the RTO Adder, finding that ISO-NE's founding utilities' "voluntary proposal to establish RTO-NE [coupled with] their commitment to transfer the day-to-day operational control authority over their transmission facilities to RTO-NE, warrants a 50 basis point incentive." *Id.* (quoting 106 FERC ¶ 61,280, at P 235). The D.C. Circuit subsequently upheld FERC's orders approving the formation of ISO-NE and the associated incentive structure. Compl., ¶ 55 (citing *Me. Pub. Utils. Comm'n v. FERC*, 454 F.3d 278 (D.C. Cir. 2006)).

For more than two decades, Plaintiffs have remained transmission-owning members of ISO-NE and have received the RTO Adder incorporated into their FERC-approved rates. Compl., ¶ 56. Plaintiffs rely on the RTO Adder in evaluating investments in transmission infrastructure, which typically involve different risks and returns than investments in other portions of their businesses. *Id.*

Just as importantly, the TOA preserves the voluntary nature of RTO participation through withdrawal provisions that allow transmission owners to leave ISO-NE. The TOA establishes two withdrawal mechanisms: (1) member entities have a right to withdraw from ISO-NE without specific cause at regular intervals; and (2) member entities may withdraw in the middle of a term

---

[2] RTOs are not-for-profit entities that coordinate electric transmission owners' assets by taking over tariff, operational, and planning responsibility from the transmission owners. Compl., ¶¶ 6–7. RTOs are given the final say over what, when, where, and by whom regional transmission facilities are constructed on the property of transmission owners, and determine whether and when third parties (like electric generation facilities selling wholesale electricity) may access these facilities. *Id.*

if certain enumerated events occur. Compl., ¶¶ 58-66. Plaintiffs rely on these provisions to preserve essential property and autonomy interests, and ensure that they may exit ISO-NE if participation no longer serves their interests. Compl., ¶ 56.

The RTO Requirement directly targets those withdrawal rights. Rather than permitting transmission owners to determine whether continued participation in ISO-NE remains beneficial, the statute conditions ownership and control of transmission facilities in Connecticut on continued participation in the RTO.

On July 1, 2025, Connecticut Governor Lamont signed Public Act 25-173 into law. Section 28 of the Act establishes the RTO Requirement, stating:

> Sec. 28. (NEW) (Effective from passage) (a) For the purposes of this section, "electric distribution company" and "regional independent system operator" have the same meanings as provided in section 16-1 of the general statutes, as amended by this act.
>
> (b) On and after the effective date of this section, no electric distribution company shall own or control transmission facilities, as defined in subdivision (1) or (4) of subsection (a) of section 16-50i of the general statutes and located in the state ***unless such company participates in the regional independent system operator***.

Compl., ¶ 69 (emphasis added).

The legislative record confirms that the RTO Requirement was enacted for a singular purpose: to provide a basis for eliminating Plaintiffs' RTO Adder. Compl., ¶ 71. No legislative analysis evaluated the costs or benefits of mandatory ISO-NE participation. Instead, Representative Jaime Foster (an author of the legislation) expressly stated that the requirement was intended to provide FERC with a basis to revoke the RTO Adder:

> There's another section that I'd like to bring to people's attention that has not yet been talked about, and that's Section 28 of this bill. In this bill, we require our utility companies to participate in ISO New England.

> And for those of you who are paying attention, you might think, well, what is their other option? They don't really have one. But that it is optional right now, allows them an adder on their transmission costs. *And this requirement,* ***it is our hope, will give us the appropriate authority for FERC to deny that adder in the transmission planning cost.***

*Id*. (emphasis added).

Contemporaneous legislative materials reflected the same objective. Connecticut's non-partisan Office of Legislative Research captured this intent in its analysis of the bill, and the Connecticut Office of Fiscal Analysis observed that Section 28 of Public Act 25-173 was intended to "make procedural changes to ISO-New England membership[.]" Compl., ¶¶ 72-73. The Connecticut Department of Energy and Environmental Protection ("DEEP") likewise published a white paper suggesting that requiring membership in an RTO could work to eliminate the RTO Adder, and this white paper was cited by Representative Foster. Compl., ¶¶ 74-75.

Connecticut's effort did not occur in isolation. Over the past year, Maine,[3] Rhode Island,[4] Maryland,[5] New Jersey,[6] and Pennsylvania[7] have each passed or advanced legislation requiring RTO participation. New Hampshire, meanwhile, has studied leaving ISO-NE altogether based on

---

[3] *See* Maine L.D. 2038, 132nd Legis. (2026); Kaitlyn Budion, *How lawmakers tried to address energy affordability this session*, MAINE MORNING STAR (Apr. 28, 2026), https://mainemorningstar.com/2026/04/28/how-lawmakers-tried-to-address-energy-affordability-this-session/.

[4] R.I. H.7127, Art. XI, § 3 (2026).

[5] *See* Md. HB1532/SB841 (2026); Ethan Howland, *Exelon, FirstEnergy utilities' RTO adder targeted by Maryland in FERC complaint*, UTILITYDIVE (July 7, 2026), https://www.utilitydive.com/news/exelon-firstenergy-ferc-maryland-rto-adder/824576/.

[6] *See* N.J. A2757/S1673 (2026); Ethan Howland, *New Jersey increases transmission oversight in 'affordability' push*, UTILITYDIVE (July 8, 2026), https://www.utilitydive.com/news/new-jersey-transmission-oversight-data-center-affordability-sherrill/824681/.

[7] *See* Pa. H.B. 2755, 2025–2026 Regular Session (2026); Maryann Pugh, *Pielli Bill Targets Utility Incentives as Power Costs Rise*, MYCHESCO (Oct. 2, 2026), https://www.mychesco.com/a/news/government/pielli-bill-targets-utility-incentives-as-power-costs-rise/.

a 2025 bill.[8] The legislative history accompanying those measures likewise reflects a common objective: eliminating transmission owners' RTO adders. Viewed together, these enactments represent a sprawling and expanding quilt of efforts by states to replace Congress's system of voluntary and incentivized RTO participation with mandatory participation untethered from the incentives approved by FERC.

The RTO Requirement is one such effort. By conditioning continued ownership of transmission facilities on participation in ISO-NE, the statute seeks to convert voluntary participation into a legal mandate while simultaneously eliminating the federally approved incentive that accompanied that participation. Plaintiffs contend that, in doing so, the statute unlawfully impairs contractual rights, burdens protected property interests, and conflicts with federal law.

## III. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), the Court must "accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). On a Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings, *e.g.*, affidavits, documents, or otherwise competent evidence. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Otherwise, "the standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

---

[8] *See* London Econ. Int'l, *Investigating New Hampshire's Participation in ISO New England* (July 15, 2026), https://www.oca.nh.gov/sites/g/files/ehbemt711/files/documents/new-hampshire-inquiry_hb-690_final-report_2026.07.15.pdf.

## IV. ARGUMENT

Defendants' motion asks the Court to accept two remarkable propositions: that Connecticut officials may invoke the RTO Requirement as a basis for affirmative relief before FERC while no state official may be called upon to defend that statute in federal court, and that the statute itself may alter Plaintiffs' rights without causing a judicially cognizable injury. Neither proposition is correct. Defendants are proper parties under *Ex parte Young* because they are enforcing the statute by actively giving effect to the RTO Requirement and pursuing the precise result the statute was enacted to achieve. Plaintiffs, meanwhile, have suffered concrete and ongoing injuries both from the statute's impairment of their contractual and property rights and from Defendants' continuing efforts to invoke the statute before FERC. Defendants' remaining jurisdictional and merits arguments fare no better and provide no basis for dismissal.

### A. Defendants Are Not Protected by Sovereign Immunity

Defendants argue that sovereign immunity bars this suit for two related reasons: (1) all Defendants other than the PURA Defendants lack any connection to or authority to enforce the RTO Requirement; and (2) no Defendant, including the PURA Defendants, may be sued because the RTO Requirement has not been enforced through a pending or threatened state enforcement proceeding. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs' Br.") [ECF No. 52-1] at 14-29.

Both arguments fail. The only way to achieve the purpose of the RTO Requirement—the elimination of Plaintiffs' RTO Adder—is by filing a complaint at FERC pursuant to Section 206 of the Federal Power Act ("FPA"). To that end, Defendants have filed such a complaint (the "FERC Complaint"), affirmatively invoked the RTO Requirement before FERC, continue to pursue relief predicated upon it, and rely on the statute as the basis for altering Plaintiffs' rights and obligations. This is "enforcement" of the RTO Requirement by any commonsense definition

of the word.[9] At the same time, the statute itself presently burdens Plaintiffs' contractual and property rights. Those facts readily satisfy the requirements of *Ex parte Young*.

The doctrine established in *Ex parte Young*, 209 U.S. 123 (1908), permits suits for prospective relief against state officials engaged in ongoing violations of federal law. The inquiry is a straightforward one: whether the complaint alleges an ongoing violation of federal law and seeks prospective relief. *CSX Transp., Inc. v. New York State Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). In addition, when determining whether a particular official may be sued, courts require only "some connection" between the official and the challenged conduct. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005).[10]

Those requirements are readily satisfied here. *First*, Defendants are actively giving effect to the RTO Requirement through the FERC Complaint they initiated and continue to prosecute. *Second*, *Ex parte Young* does not require Plaintiffs to await a formal state enforcement proceeding before challenging a statute that is already being given present effect. *Third*, Plaintiffs suffer an ongoing constitutional injury from the statute itself, irrespective of any future enforcement activity.

---

[9] *See Enforce, Black's Law Dictionary* (12th ed. 2024) ("[t]o give force or effect to (a law, etc.); to compel obedience to."); *Enforce*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/enforce (last visited Nov. 9, 2026) ("(1) to give force to, strengthen . . . (3) constrain, compel . . . (5) to carry out effectively[.]").

[10] "[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013). Recent Supreme Court decisions have tended to treat sovereign immunity as a question of personal rather than subject matter jurisdiction. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 282 (2023) (Gorsuch, J., concurring in part and dissenting in part) ("Generally, questions about sovereign immunity do not go to a court's subject-matter jurisdiction (something a court must consider in every case even if the parties do not"). Instead, questions of sovereign immunity usually go to a court's personal jurisdiction over a particular defendant."). "[T]he fact that sovereign immunity is waivable suggests it is not a threshold jurisdictional issue." *Cuomo v. N.Y. State Assembly Judiciary Comm.*, 683 F. Supp. 3d 258, 282 n.18 (E.D.N.Y. 2023) (citing *Parella v. Ret. Bd. of R.I. Emps.' Ret. Sys.*, 173 F.3d 46, 55 (1st Cir. 1999)).

*Finally*, because each Defendant has exercised authority to advance the statute's objectives, all are proper *Ex parte Young* defendants.

The Court should therefore reject Defendants' sovereign immunity defense.

### 1. Defendants Are Proper *Ex parte Young* Defendants Because They Are Actively Enforcing the RTO Requirement

Defendants' sovereign immunity argument rests on a fundamental contradiction. Before FERC, Defendants invoke the RTO Requirement as legally operative and contend that it altered Plaintiffs' rights and obligations. Before this Court, they argue that no state official has a sufficient connection to the statute to permit suit under *Ex parte Young*. The doctrine permits no such maneuver. State officers cannot rely upon a statute to obtain affirmative relief in one forum while disclaiming responsibility for giving effect to that statute in another.

Defendants are actively giving effect to the RTO Requirement in at least two principal ways. *First*, they initiated and continue to prosecute the FERC Complaint, which relies upon the RTO Requirement as the legal basis for relief. *Second*, they continue to maintain that the statute altered Plaintiffs' contractual and property rights. Each form of conduct independently establishes the requisite connection to the challenged law. Taken together, they leave no doubt that Defendants are actively implementing, enforcing, defending, and seeking to benefit from the statute.

The remainder of this section addresses three related points: (1) how Defendants are enforcing the RTO Requirement through the FERC proceeding; (2) how Defendants are actively giving effect to the RTO Requirement in other ways; and (3) why Plaintiffs suffer present constitutional injury from the statute itself.

#### a. Defendants Are Actively Giving Effect to the RTO Requirement Through the FERC Complaint

The FERC Complaint and the RTO Requirement cannot be disentangled, because the relief Defendants seek before FERC depends entirely on the legal effect of the statute. Defendants' theory before FERC is that the RTO Requirement transformed Plaintiffs' participation in ISO-NE from voluntary to mandatory, thereby eliminating the justification for the RTO Adder. As Defendants argue in the FERC Complaint:

> In 2025, Connecticut enacted a law prohibiting the state's EDCs from "own[ing] or control[ling]" certain transmission facilities in Connecticut "unless [the EDC] participates in [ISO-NE]." Because Respondents both operate as EDCs in Connecticut and "own or control . . . transmission facilities" in the state, the law's ISO-NE participation requirement applies squarely to both entities. As such, their continued participation in ISO-NE is no longer "voluntary," and the Commission should no longer extend additional financial inducements to accomplish such participation.

Compl. Ex. 1 at 3.

The FERC Complaint therefore does not merely reference the RTO Requirement; it relies on the statute as the essential legal predicate for the relief Defendants seek. By asserting that the RTO Requirement altered Plaintiffs' legal rights and obligations, Defendants are actively giving effect to the statute and advancing the precise outcome it was enacted to achieve. Having asked FERC to treat the statute as legally operative, Defendants cannot now argue that the statute lacks sufficient legal consequence, or sufficient connection to its proponents, to support suit under *Ex parte Young*. The FERC Complaint thus constitutes an affirmative act enforcing and implementing the challenged statute.

Defendants respond that the FERC Complaint cannot establish the requisite connection because FERC, rather than Connecticut, will make the ultimate decision. Defs' Br. at 25. But that argument conflates final adjudication with implementation of the challenged statutory scheme.

Courts applying *Ex parte Young* have repeatedly focused on the officials' role in bringing about the challenged action, not solely on who ultimately renders the final decision. *See MCI Telecommunications Corp. v. Illinois Bell Telephone Co.*, 222 F.3d 323 (7th Cir. 2000), *cert. denied*, 531 U.S. 1132 (2001) (*Ex parte Young* applied to state public service commissioners over their arbitration and approval of telephone interconnection agreements subject to federal law, even though a separate adjudicative body participated in rendering the final decision).[11]

That principle applies here. The RTO Requirement was enacted for the express purpose of eliminating Plaintiffs' RTO Adder through a FERC proceeding. As alleged in the Amended Complaint, both DEEP and the Connecticut legislators who wrote the RTO Requirement understood the law not as a means to ensure that Plaintiffs remained within ISO-NE, but as the first step to strip Plaintiffs of their RTO Adder. Compl., ¶¶ 71-75. Defendants then invoked the statute before FERC and sought affirmative relief based on the legal consequences they contend it created.

State officers cannot avoid suit merely because the challenged consequences are mediated through the actions of another actor. What matters is whether the officials' conduct constrains the plaintiffs' rights or otherwise gives effect to the challenged legal regime. *Air Evac EMS, Inc. v. Cheatham*, 260 F. Supp. 3d 628, 640 (S.D. W. Va. 2017), *aff'd*, 910 F.3d 751 (4th Cir. 2018)

---

[11] *See also Michigan Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867–68 (6th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Feb. 16, 2000) (*Ex parte Young* applied to state public service commissioners when FCC could arbitrate disagreement between new and incumbent providers as involvement of commissioners meant court could issue "equitable relief from an ongoing violation of federal law."); *Concerned Pastors for Social Action v. Khouri*, 194 F. Supp. 3d 589, 604–06 (E.D. Mich. 2016) (*Ex parte Young* applied to Flint receivership board members even though they lacked sufficient authority to implement the relief desired by plaintiffs on their own); *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (where one officer clears the way for prospective enforcement by denying the validity of tribal car registrations and a second engages in traditional enforcement by enforcing traffic laws, both are subject to suit under *Ex parte Young* as giving meaningful effect to the challenged statutes).

(sufficient connection where state officials "constrain[ed a party's] ability to collect more than the established reimbursement rate . . . even if indirectly") (discussing *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)). Defendants did not simply express a legal view. They invoked the RTO Requirement before FERC for the purpose of bringing about the precise outcome the statute was enacted to achieve.

Moreover, unlike the officials in Defendants' cited cases, Defendants did not merely provide advice to an independent decisionmaker possessing unfettered discretion. They invoked the RTO Requirement as the basis for affirmative relief before FERC and initiated a proceeding designed to produce the very outcome the statute was enacted to achieve. Rather than exercising unfettered discretion, FERC is required to adjudicate such proceedings. *See Int'l Transmission Co. v. FERC*, 988 F.3d 471, 484 (D.C. Cir. 2021) ("It is FERC's duty under Section 206 to assess a complaint's allegations that a utility's existing rate is unjust or unreasonable."). In this respect, FERC functions much like a court resolving a dispute brought by the parties before it. The existence of an adjudicator does not erase the connection between the party invoking a legal right and the relief sought through that process. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (the work of "resolv[ing] disputes between parties" through adjudication, even when the adjudicator enacts their decision after making it, is fundamentally different from executive enforcement of a statute); *Greene v. Raffensperger*, 599 F. Supp. 3d 1283, 1295 (N.D. Ga. 2022) ("'If a reasonable threat of prosecution creates a ripe controversy,' it necessarily follows that the 'actual filing of [an] administrative action threatening sanctions' does as well.") (quoting *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625-26 n.1 (1986)).

In short, Defendants cannot disclaim their efforts to enforce the RTO Requirement. They have invoked it, relied upon it, and continue to seek relief predicated upon it. That conduct is more than sufficient to establish the requisite connection under *Ex parte Young*.

**b. Defendants Are Otherwise Giving Effect to the Statute**

Assuming, *arguendo*, that the FERC Complaint standing alone does not suffice to apply *Ex parte Young* to Defendants, Defendants have still given effect to the RTO Requirement. *Ex parte Young* is not a doctrine that rests on highly technical distinctions. Rather, the key consideration is whether state officials are invoking, defending, or otherwise giving effect to a challenged law in a manner that causes a present injury and supports prospective relief. Such is occurring here.

It is well established that state officers may be sued under *Ex parte Young* even when the challenged statute has not yet been applied. A state law that presently alters legal rights and imposes ongoing consequences creates a live controversy sufficient for prospective relief. *See Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220-22 (2d Cir. 2008) ("Air Transport's preenforcement challenge presents no problem of unripeness or other barriers to justiciability" where New York had simply enacted a law without taking affirmative steps to enforce, and which had not yet gone into effect when the District Court ruled); *Walden v. Kosinski*, 153 F.4th 118, 133-34 (2d Cir. 2025) (*Ex parte Young* applied to state board of elections even when it had "disclaimed an intent to enforce the challenged naming provisions" when it continued to defend statute's constitutionality and city board of elections said it would enforce consistent with the state's view); *Greater Chautauqua Federal Credit Union v. Marks*, No. 1:22-cv-2753 (MKV), 2023 WL 2744499, at *9 (S.D.N.Y. 2023) (holding that "the motion by the Attorney General to intervene in this case to defend the statute is evidence of her willingness to enforce the Act[,]" and thus grounds to apply *Ex parte Young* exception to sovereign immunity); *Greene*, 599 F. Supp. 3d

at 1294-95 (holding that where state administrative proceeding concerning plaintiff candidate's eligibility for office was a proceeding before an administrative law judge, plaintiff had standing to challenge the constitutionality of the underlying statute even though the Secretary of State had not ruled to disqualify her).[12]

The Second Circuit's decision in *Tweed-New Haven Airport Authority v. Tong* is especially instructive. There, Connecticut argued that a constitutional challenge was premature because no overt threat of enforcement existed. The Second Circuit disagreed, explaining that "[w]here a statute specifically proscribes conduct"—like the RTO Requirement does by prohibiting Plaintiffs from owning or operating their transmission infrastructure if they are not part of an RTO—the court "does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (citing *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013)) (internal quotation marks omitted). Rather, the court "presume[s] such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Id.*[13]

---

[12] Although the doctrines are distinct, courts frequently recognize significant overlap in the injury, causation, and enforcement inquiries of Article III standing analysis and *Ex parte Young*. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019); *see also Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (discussing and citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)) (discussing the "common thread" between Article III standing analysis and *Ex parte Young* analysis); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy this element of *Ex parte Young*.").

[13] Such a disavowal may be necessary, although not always sufficient, for a party to avoid suit. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 48 (2021) (holding that plaintiffs lacked standing against private-party defendant because he "supplied sworn declarations" attesting to his lack of intention to file a suit under the challenged statute); *Walden*, 153 F.4th at 133–34 (disavowal ineffective when contradicted by other facts).

The same presumption applies here. The RTO Requirement became law on July 1, 2025, and remains actively relied upon by Defendants. Courts routinely presume enforcement when a statute is recent and non-moribund. *See Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 138 (2d Cir. 2023) (quoting *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016)) (enforcement assumed when statute was passed "months" before suit was brought); *see also Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024) (holding that recent enactment favors the presumption that the law is intended to be enforced).[14] And, far from disavowing an intent to enforce, Defendants expressly told FERC that the RTO Requirement "is in effect and enjoys a presumption of validity that has not been overcome." *See* Response of Connecticut State Agencies in Opposition to Motion to Hold Proceeding in Abeyance, *Connecticut Dept. of Energy and Envtl. Prot. et al. v. ISO New England Inc. et al.*, Docket No. EL26-79-000 (FERC July 16, 2026). They cannot now disclaim an intent by the State to enforce the law.

Defendants' own authorities point in the same direction.[15] Defs' Br. at 20-25. The cases on which Defendants rely do not involve officials who actively invoked a challenged statute while

---

[14] Recency is not required, though, so long as there is ongoing injury and thus possible prospective relief. *See Seneca Nation v. Hochul*, 58 F.4th 664, 670–72 (2d Cir. 2023) (where Indian nation asserted 1954 contract granting highway easement was invalid, *Ex parte Young* exception was met, because the relief requested was from the ongoing effects of the unconsented easement, not the 1954 contract itself).

[15] Multiple circuits have rejected "imminence" as an *Ex parte Young* criterion. *See, e.g., Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 846–47 (9th Cir. 2002) (rejecting the argument that *Ex parte Young* requires a "present threat of enforcement"); *Summit Medical Associates, P.C. v. Pryor*, 180 F.3d 1326, 1336–40 (11th Cir. 1999) (holding that an "imminence requirement would essentially render *Ex parte Young* a nullity"). And, in any event, *Ex parte Young* turns on the state officer's intent to enforce the challenged statute. *See KM Enterprises, Inc. v. McDonald*, No. 11 Civ. 5098 (ADS) (ETB), 2012 WL 4472010, at *10 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013) ("Certainly, the requirement of an ongoing and continuous violation of federal law need not mean that the Commissioner be in the midst of a current misapplication of federal law against the particular plaintiff initiating the suit. Such a decree would essentially render *Ex parte Young* a nullity."); *Babyrev v. Lanotte*, No. 16 CIV. 5421 (ER), 2018 WL 388850, at *4

simultaneously denying any connection to its implementation. Instead, they involved officials who either disclaimed any intent to enforce the law or possessed only speculative authority over future enforcement. *See Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 189 (D. Conn. 2009) (*Ex parte Young* inapplicable where the official expressly stated that it had "no such plans at this time" to pursue enforcement); *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 296 (W.D.N.Y. 2010) (*Ex parte Young* inapplicable where the official represented that he was not taking enforcement action and had no intention of doing so); *Wang v. Pataki*, 396 F. Supp. 2d 446, 454 (S.D.N.Y. 2005) (rejecting claims based only on speculation that the Attorney General might undertake future enforcement activity).

Indeed, this case presents a stronger basis for judicial review than *Tweed-New Haven*. There, Connecticut merely enacted a statute and argued that no overt threat of enforcement existed. The Second Circuit rejected that argument. 930 F.3d at 70-71. Here, Defendants have done more than simply enact a statute. They have affirmatively invoked the RTO Requirement before FERC, represented that it alters Plaintiffs' legal status, and relied upon it as the basis for relief. Defendants are not passive observers of the statute; they are its active proponents.

Accordingly, Plaintiffs need not await additional action by Defendants before seeking prospective relief from an unconstitutional statute that continues to operate against them. What Defendants have already said and done is more than enough.

#### c. Plaintiffs Suffer Present and Ongoing Injury from the RTO Requirement Itself

Even apart from Defendants' affirmative conduct, Plaintiffs suffer present constitutional injury from the statutory presence of the RTO Requirement itself. Defendants' sovereign immunity

---

(S.D.N.Y. Jan. 11, 2018) ("[W]here there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied.").

theory focuses almost exclusively on "enforcement" while overlooking the independent injury caused by the statute's purported alteration of Plaintiffs' contractual and property rights, apart from any action whatsoever by Defendants.

The premise underlying Defendants' argument is that Plaintiffs cannot challenge the RTO Requirement unless and until they attempt to withdraw from ISO-NE and are subjected to some additional act of enforcement. That is not the law. A plaintiff need not await an enforcement proceeding, expose itself to liability, or otherwise suffer additional harm before seeking prospective relief from an allegedly unconstitutional statute that is already altering its legal rights.

It is well established that the enactment of a statute burdening a party's constitutional rights constitutes an independent injury to that party. *See Lazar v. Kroncke*, 862 F.3d 1186, 1198-99 (9th Cir. 2017) (revocation of a contractual provision in and of itself constitutes a colorable injury for the purpose of standing); *Maron v. Chief Financial Officer of Florida*, 136 F.4th 1322, 1329-31 (11th Cir. 2025) (an uncompensated taking constitutes a sufficient constitutional injury for standing, even without determination of a tangible economic injury, as compensation for a taking is the forward-looking remedy for the injury, not the injury itself); *see also Knick v. Township of Scott*, 588 U.S. 180, 190 (2019) ("The Fifth Amendment right to full compensation [pursuant to the Takings Clause] arises at the time of the taking."). Likewise, the Second Circuit has recognized that *Ex parte Young* remains available where plaintiffs seek prospective relief from the continuing effects of governmental action that allegedly violates federal law. *See Seneca Nation*, 58 F.4th at 670-72. This holds true whether the impleaded officer is taking continuous action or failing to take action that would end the ongoing constitutional violation. *Id*. at 667-68 (*Ex parte Young* was met because impleaded officers—the New York Governor, Attorney General, and Transportation

Commissioner—each had some general authority to "obtain a valid easement" but had not done so). No pending "enforcement" action is needed when the injury is present and ongoing.

This principle is especially clear in the context of Plaintiffs' Contract Clause claim (Count 4). State officers are not required to actively bring suit or threaten to enforce a statute against a party to the contract to be liable under *Ex parte Young*, nor does *Ex parte Young* "apply only to those state laws enforceable through punitive sanctions." *Cheatham*, 260 F. Supp. 3d at 639-41. Rather, "enforcement can be shown through a state-law scheme that imposes a 'compulsion or constraint' in contravention of federal law." *Id.* at 639-40 (quoting *Air Evac EMS*, 851 F.3d at 519); *see also Iten v. County of Los Angeles*, 81 F.4th 979 (9th Cir. 2023) (landlord had standing to challenge eviction moratorium under the Contract Clause even though he had not sought to evict his tenant). So long as the state officer who has been sued "give[s] effect" to the challenged law violating the Contract Clause, *Ex parte Young* can apply. *See HRPT Properties Trust v. Lingle*, 715 F. Supp. 2d 1115, 1125-29 (D. Haw. 2010) (rejecting argument that challenged statute lacked proper defendant because law operated automatically, and holding that statute remained reviewable because it was "being given effect by state officials").

Defendants therefore err in treating Plaintiffs' failure to attempt withdrawal from ISO-NE as dispositive. Plaintiffs allege that the RTO Requirement has already impaired their contractual right to withdraw from the TOA and has already burdened their property interests by transforming what was previously a voluntary relationship into a mandatory one. Those injuries arise from the statute's present operation, not from some future enforcement event.

The Takings Clause allegations reinforce the same conclusion. A protected property interest may exist even where the government does not formally acquire title to the affected property. *See Cienega Gardens v. United States*, 331 F.3d 1319, 1329 (Fed. Cir. 2003). If Plaintiffs

are correct that the RTO Requirement stripped them of rights previously associated with participation in the TOA, the alleged constitutional injury accrued when those rights were burdened, not when Plaintiffs eventually decide whether to exercise them. *See Knick*, 588 U.S. at 190.

Defendants may dispute whether Plaintiffs ultimately possess the contractual or property interests asserted in the Amended Complaint. But that is a merits question, not a standing or sovereign immunity question. *See Lazar*, 862 F.3d at 1198-99 (warning against conflating standing with the merits and recognizing that plaintiffs asserting a colorable expectancy or contractual interest need not prove the merits of that interest to establish jurisdiction).

For similar reasons, Plaintiffs need not attempt withdrawal from ISO-NE before seeking judicial review. A plaintiff need not "expose [it]self to liability before bringing suit to challenge . . . the constitutionality of a law *threatened to be enforced*." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (emphasis added). That principle applies with particular force here, where Defendants contend that the RTO Requirement has already altered Plaintiffs' legal rights and obligations.

The same rule has been applied in Contract Clause cases. In *McDonald's Corp. v. Nelson*, 822 F. Supp. 597 (S.D. Iowa 1993), *aff'd sub nom. Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383 (8th Cir. 1994), *cert. denied*, 513 U.S. 1032 (1994), the court rejected the argument that plaintiffs were required to undertake conduct exposing themselves to adverse consequences before challenging legislation impairing contractual rights. Because the challenged enactment itself altered the parties' contractual relationships, immediate review was appropriate. The court explained that "Plaintiffs . . . should not be forced to act at their peril before a determination of these issues." 822 F. Supp. at 605.

That concern is present here. Requiring Plaintiffs to attempt withdrawal from ISO-NE before obtaining judicial review would force them to incur substantial regulatory and business risk merely to challenge a statute they contend is already impairing their rights. Plaintiffs need not suffer additional injury before seeking relief from an ongoing one.

Indeed, courts routinely find Contract Clause claims ripe when legislation itself alters contractual rights and no further factual development is needed. *See HRPT Properties Trust*, 715 F. Supp. 2d at 1129-35 (plaintiff's claim was ripe because the legislation worked a material change of the lease); *see also Lazar*, 862 F.3d at 1198-99; *Franklin California Tax-Free Trust v. Puerto Rico*, 85 F. Supp. 3d 577, 587-92 (D.P.R. 2015) (challenge was ripe where law required no fact-finding to evaluate, and nullification of "statutory and contractual security rights and remedial provisions . . . was a direct and immediate injury to the plaintiff[s]").

Accordingly, sovereign immunity does not turn on whether Plaintiffs have attempted to leave ISO-NE. Plaintiffs allege that the RTO Requirement presently impairs their contractual rights, burdens their property interests, and continues to operate against them today. Those ongoing injuries provide an independent and wholly sufficient basis for prospective relief under *Ex parte Young*.

### 2. All Defendants Have Sufficient Connection to the RTO Requirement

Separately, Defendants argue that most of the individual defendants lack the connection to the RTO Requirement required by *Ex parte Young*. That argument fares no better.

First, as noted above, all Defendants are currently enforcing the RTO Requirement by pursuing the FERC Complaint. Even if Defendants' unduly narrow view of *Ex parte Young* were correct, however, Defendants concede that the PURA Defendants possess authority to enforce the RTO Requirement. Defs' Br. at 14-25. Their remaining argument is that Defendants Coleman,

Tong, and Dykes lack a sufficient connection to the RTO Requirement. That argument ignores the conduct those Defendants have already undertaken to give effect to the statute.

For a state official to be subject to suit under *Ex parte Young*, the official need only have "some connection" with the enforcement of the act. *Dairy Mart*, 411 F.3d at 372-73; *Dobbs v. Vahey*, No. 3:25-CV-00824 (SVN), 2026 WL 295694, at *5 (D. Conn. Feb. 4, 2026) ("To be sued under *Ex parte Young*, officials need not possess unilateral authority" to accomplish the goals of the statute, so long as they have "some connection" to giving effect to the challenged policy). Courts sometimes describe this requirement as the existence of "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty[.]" *See Howe v. Burwell*, No. 2:15-CV-6, 2015 WL 4479757, at *16 (D. Vt. July 21, 2015) (internal quotation omitted).

The connection required by *Ex parte Young* is intentionally modest. As the Second Circuit has explained, "[s]o long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Dairy Mart*, 411 F.3d at 372-73. The relevant question is not whether a defendant possesses exclusive authority to enforce a statute, but whether the defendant plays a meaningful role in giving effect to it.

**a. *Whole Woman's Health* Supports Plaintiffs Rather than Defendants**

Defendants' reliance on *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), is misplaced. Indeed, the Supreme Court's reasoning in *Whole Woman's Health* supports Plaintiffs rather than Defendants.

The defendants dismissed in *Whole Woman's Health* either lacked any enforcement role at all or lacked authority meaningfully connected to the challenged statutory scheme. *Id.* at 38-45. By contrast, the Court permitted claims to proceed against state licensing officials whose authority enabled them to help implement that scheme, even though Texas had deliberately structured S.B.

8 around private enforcement mechanisms. *Id*. at 45-48. The Court's analysis therefore focused on whether the defendants possessed authority capable of giving effect to the challenged legal regime, not whether they were the exclusive or primary enforcement actors.

The Court likewise dismissed the only named private defendant because he submitted sworn declarations disavowing any intention to bring an action under S.B. 8. *Id*. at 48. That aspect of the decision is particularly instructive. The Supreme Court treated the defendant's affirmative disavowal of enforcement as significant to the jurisdictional analysis.

Here, by contrast, Defendants have never disavowed reliance upon the RTO Requirement. They have never represented that they will refrain from pursuing the statute's objectives. To the contrary, they are currently undertaking the sole means of obtaining those objectives, by affirmatively invoking the statute before FERC, contending that it altered Plaintiffs' legal rights and obligations, and seeking relief predicated upon that assertion.

Defendants are therefore far more like the licensing officials whom the Supreme Court permitted to remain in the case than the parties whom it dismissed. Unlike the dismissed defendants in *Whole Woman's Health*, the Connecticut officials sued here are actively using the challenged statute as a source of authority and as the basis for affirmative governmental action.

Indeed, Defendants' position here stands in marked tension with Connecticut's own position before the Supreme Court in *Whole Woman's Health*. In an amicus brief supporting the challengers to S.B. 8, Connecticut and numerous sister states argued that "the doctrine of sovereign immunity does not bar private suits against state officials, including judicial officials, for equitable and declaratory relief to stop states from violating the Constitution." Brief of Massachusetts et al. as Amici Curiae in Support of Petitioners at 13, *Whole Woman's Health v. Jackson*, Nos. 21-463 & 21-588 (U.S. Oct. 27, 2021) ("*Whole Woman's Health* Amicus"). Connecticut further argued

that "Texas's private enforcement mechanism does not shield such brazen disrespect for the Constitution from judicial review." *Id.* at 10.

Connecticut was right. Just as Texas could not structure its affairs to evade judicial review, Connecticut officials cannot invoke the RTO Requirement before FERC, pursue the precise outcome the statute was enacted to achieve, and then insist that no proper defendant exists to challenge that conduct. *Ex parte Young* exists to prevent precisely that result.

#### b. The Non-PURA Defendants Easily Satisfy the "Some Connection" Requirement

Defendants concede the PURA Defendants have the authority and a particular duty to enforce the statute, but argue that Defendants Coleman, Tong, and Dykes lack sufficient enforcement authority. Defs' Br. at 14-25.[16] Specifically, Defendants argue that filing the FERC Complaint cannot establish the requisite connection because the Office of Consumer Counsel allegedly lacks authority to enforce the statute, the Attorney General may act only through PURA, and DEEP's authority does not extend to matters involving utility rate regulation. *Id.* at 16-20. That argument misconstrues the standard governing *Ex parte Young*.

As discussed above, the relevant inquiry is not whether a defendant possesses exclusive or unilateral enforcement authority. Rather, the question is whether the defendant has a meaningful role in giving effect to the challenged law. Courts repeatedly emphasize that the required connection is modest. A state official need not be expressly identified in the challenged statute,

---

[16] As part of this argument, Defendants claim that PURA has exclusive authority over any act touching on "rate regulation for public utilities and regulated entities[,]" *see* Conn. Gen. Stat. § 22a-2d(a). However, this would abrogate the statutory authority of the non-PURA Defendants to bring the FERC Complaint in the first place. Defendants' competing accounts of state authority cannot be reconciled. The non-PURA Defendants either possessed sufficient authority to invoke the RTO Requirement before FERC or they did not. Defendants cannot assert both propositions at once.

and a defendant's enforcement authority need not be direct or exclusive. *Dairy Mart*, 411 F.3d at 372-73. Indeed, the Fifth Circuit has explained that "[a] scintilla of enforcement" is sufficient. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 180 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1124 (2021). Likewise, "*Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision." *Mulgrew v. U.S. Dep't of Transp.*, 750 F. Supp. 3d 171, 203 (S.D.N.Y. 2024) (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022)).

The cases applying that principle confirm that participation in implementing, defending, or advancing a challenged statutory scheme is enough. Thus, even if Defendants are not "specifically empowered to ensure compliance with the statute at issue," they may be proper defendants under *Ex parte Young* if they have "assisted or currently assist in giving effect to the law." *See Wagnon*, 476 F.3d at 828. Similarly, courts have found the requisite connection where officials exercised discretionary authority to defend a statute or otherwise advance its objectives. *See Greater Chautauqua Federal Credit Union*, 2023 WL 2744499, at *9; *see also Whole Woman's Health Alliance v. Hill*, 377 F. Supp. 3d 924, 934-36 (S.D. Ind. 2019) (*Ex parte Young* applied to Attorney General with authority to intervene in criminal cases brought by others even when he could not bring cases directly).

Conversely, when courts have found the connection lacking, the missing element has generally been some combination of authority and willingness. In *Chrysafis v. James*, for example, the court adopted the Fifth Circuit's "scintilla of enforcement" standard but found it unsatisfied because the Attorney General neither enforced nor defended the challenged law. 534 F. Supp. 3d 272, 297 (E.D.N.Y. 2021). Here, in contrast, the non-PURA Defendants have affirmatively

invoked the RTO Requirement before FERC and continue to defend the legal consequences they contend it creates.

The inquiry is also functional rather than formal. Courts focus on whether enjoining the defendants' conduct would prevent the challenged injury to the plaintiffs. *See CSX Transp., Inc.*, 306 F.3d at 98 (state officers charged with overseeing local tax assessors could be sued under *Ex parte Young* even when they were not performing the challenged tax assessments); *Lara v. Commissioner Pennsylvania State Police*, 91 F.4th 122, 138-40 & n.26 (3d Cir. 2024), *vacated on other grounds*, *Paris v. Lara*, 145 S. Ct. 369 (2024) (even where state police commissioner had no authority to issue firearms licenses at issue in suit, "enjoining the Commissioner from arresting 18-to-20-year-olds who openly carry firearms would in fact redress their constitutional injuries[,]" and if "a plaintiff can show that the defendant's conduct causes an injury and that enjoining the conduct would redress the injury, that showing will satisfy the 'sufficient connection' requirement under *Ex parte Young*").

Thus, where a state officer has some relevant authority combined with a demonstrable willingness to use that authority, that officer's willingness can be sufficient to meet the criteria of *Ex parte Young*. *See Greater Chautauqua Federal Credit Union*, 2023 WL 2744499, at *9 ("the motion by the Attorney General to intervene in this case to defend the statute is evidence of her willingness to enforce the Act[,]" and thus grounds to find subject matter jurisdiction under *Ex parte Young*).

The same analysis applies here. Ms. Coleman, the Connecticut Consumer Counsel, is authorized to "appear in and participate in any regulatory or judicial proceedings, federal or state, in which such interests of Connecticut consumers may be involved, or in which matters affecting utility services rendered or to be rendered in this state may be involved." *See* Conn. Gen. Stat. §

16-2a(a). Likewise, Mr. Tong, the Connecticut Attorney General, is authorized to enforce state utility law alongside PURA. *See* Conn. Gen. Stat. § 16-10. Finally, the DEEP Commissioner[17] may "initiate and receive complaints" concerning issues regulated by DEEP "for the enforcement of any statute, regulation, order or permit administered, adopted or issued by the department." *See* Conn. Gen. Stat. § 22a-6(a). Acting pursuant to those authorities, each Defendant participated in filing and prosecuting the FERC Complaint against Plaintiffs—they actively invoked the RTO Requirement before FERC, asserted that it altered Plaintiffs' legal rights and obligations, and sought affirmative relief based upon that alleged change in legal status. That conduct is more than sufficient to establish a meaningful connection to the challenged law.

Defendants' contrary position creates an untenable Catch-22. The non-PURA Defendants are allegedly connected enough to the RTO Requirement to invoke it before FERC, rely upon it as the basis for relief, and seek elimination of Plaintiffs' RTO Adder, but somehow insufficiently connected to be sued concerning that very conduct. The law does not permit state officials to rely upon a statute as a source of authority while simultaneously denying any meaningful connection to that same statute when judicial review is sought.

Nor may Connecticut evade review by dispersing authority among multiple officials. As courts have recognized, *Ex parte Young* would be substantially undermined if a state could avoid suit simply by ensuring that no single official possessed complete enforcement authority. *HRPT Properties Trust*, 715 F. Supp. 2d at 1125-29 (applying *Ex parte Young* to Governor when

---

[17] As of July 2026, Ms. Dykes has stepped down from her position as DEEP Commissioner and Emma Cimino is serving as Acting Commissioner. *Governor Lamont Announces Commissioner Katie Dykes Leaving the Department of Energy and Environmental Protection, Names Emma Cimino as Acting Commissioner*, Conn. Dep't of Energy & Environmental Protection (June 5, 2026), https://portal.ct.gov/deep/news-releases/news-releases---2026/governor-lamont-announces-commissioner-katie-dykes-leaving-deep.

defendants failed to identify who else could give effect to the statute). States cannot dodge accountability through obfuscation: "some state official must have the authority to do what *Ex parte Young* requires; otherwise, states might avoid its application by simply not explicitly giving authority to any state official." *Van Ever-Ford v. New York*, No. 13-CV-412, 2019 WL 1922065, at *13 (W.D.N.Y. Apr. 30, 2019).[18]

At bottom, all Defendants seek to benefit from the RTO Requirement and have exercised authority to advance its objectives. The PURA Defendants possess express enforcement authority. The remaining Defendants exercised their statutory authority to invoke the RTO Requirement before FERC and continue to rely upon it as the basis for affirmative relief. That is more than sufficient under the "some connection" standard. Because all Defendants are actively giving effect to the challenged statute and because Plaintiffs seek only prospective relief from ongoing violations of federal law, each Defendant is a proper defendant under *Ex parte Young*.

**B. Plaintiffs Have Standing**

Defendants argue Plaintiffs lack standing for three reasons: (1) an injunction against the non-PURA Defendants would not remedy Plaintiffs' injury; (2) Plaintiffs have not alleged a sufficiently imminent and substantial risk of harm because they have not engaged in or threatened to engage in a "course of conduct" that would violate the law; and (3) FERC's exercise of independent, uncoerced judgment breaks the chain of causation of injury. Defs' Br. at 29-37. None of these arguments is availing.

[18] The concern that states might structure a statutory scheme so that no reviewable defendant exists is not merely hypothetical. This was a key feature of the argument in *Whole Woman's Health v. Jackson*. *Cf.* Transcript of Oral Argument at 57, *Whole Woman's Health v. Jackson*, No. 21-463 (U.S. Nov. 1, 2021) (Justice Kagan questioning whether "some geniuses" had simply devised a mechanism for evading the commands of *Ex parte Young*).

To satisfy Article III's standing requirement, Plaintiffs must show: (1) an injury-in-fact; (2) that is fairly traceable to the defendants' alleged actions; and (3) a non-speculative likelihood that the injury can be remedied by the requested relief. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Causation and redressability "are often flip sides of the same coin." *Knight v. City of New York*, 164 F.4th 173, 180 (2d Cir. 2026) (internal quotation omitted). When determining whether a matter is ripe for decision, courts consider: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Strength in one prong can balance weakness in the other prong. *See*, *e.g.*, *Connecticut v. Duncan*, 612 F.3d 107, 115 (2d Cir. 2010) (first factor was not met, but hardship constituted sufficient grounds on its own). Moreover, "[t]o satisfy Article III, a plaintiff must show that his requested relief would provide meaningful redress for an injury, not that it would relieve him of *every* injury." *Knight*, 164 F.4th at 179 (emphasis in original).

**1. An Injunction Against Defendants Would Remedy Plaintiffs' Injuries**

An injunction against the non-PURA Defendants would at least partially remedy the injury to Plaintiffs' statutory filing rights and constitutional rights. It would stop Defendants' effort to deprive them of their RTO Adder by enjoining the statute upon which the FERC Complaint is predicated. Likewise, it would directly enjoin the impairment and confiscation of Plaintiffs' contractual and property rights. Defendants' argument to the contrary is difficult to reconcile with their own position at FERC that the RTO Requirement supplies the basis for the conduct and relief challenged in this case.

Separately, "[an] agency interpretation that defines contractual rights and obligations may itself create enough of an injury to confer standing on a party to that contract." *See Sw. Power Pool, Inc. v. FERC*, 736 F.3d 994, 996 (D.C. Cir. 2013) (rejecting FERC's argument that

appellant's injury—which would only occur if it chose to join an RTO and then the RTO took certain action—was too remote to constitute standing). Defendants seek to define—specifically, to narrow and abrogate—Plaintiffs' contractual rights and obligations through the FERC Complaint. This injures Plaintiffs' rights under the contract and creates an injury-in-fact.

**2. Plaintiffs Need Not Assert an Immediate Intent to Act in Violation of the RTO Requirement**

Plaintiffs are not required to show that they imminently plan to leave ISO-NE for this matter to be ready for review. Plaintiffs are already being injured through abrogation of their contractual and property rights. *See Lazar*, 862 F.3d at 1198-99 (abrogating contractual provision constitutes a sufficient constitutional injury for standing); *Maron*, 136 F.4th at 1329-31 (an uncompensated taking constitutes a sufficient constitutional injury for standing). Aside from the pure (and sufficient) constitutional injury, Plaintiffs' abrogated right to leave ISO-NE affects their interests in the here and now. *See Sw. Power Pool*, 736 F.3d at 996; *see also Iten*, 81 F.4th at 988 ("[Plaintiff] need only allege that the [Eviction] Moratorium imposed additional rights, remedies, conditions, or procedures that impair the obligations to which he and his Tenant had contracted."). Impairment of such an important contractual right and property interest not only necessarily injures Plaintiffs but also materially impacts the value of those rights and demonstrably weighs on Plaintiffs through regulatory uncertainty.

Defendants' argument that Plaintiffs must show intent to engage in some proscribed "course of conduct" fails for two reasons. *First*, that requirement arises principally in pre-enforcement challenges where the challenged law has not yet caused the plaintiff an injury. *See Vitagliano*, 71 F.4th at 136; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Here, by contrast, Plaintiffs allege that Defendants are actively enforcing the RTO Requirement via the FERC Complaint and that the RTO Requirement is already impairing their contractual and

property rights. *Second*, Defendants are mistaken in suggesting that Plaintiffs have no affected course of conduct. Before the enactment of the RTO Requirement, Plaintiffs could voluntarily participate in ISO-NE, while receiving the benefit of the RTO Adder. Defendants now seek to force a fundamentally different arrangement: continued participation in ISO-NE without that benefit. Remaining in an RTO voluntarily and remaining in an RTO because state law leaves no meaningful alternative are not the same course of conduct. *See National Collegiate Athletic Ass'n v. Califano*, 622 F.2d 1382, 1389 (10th Cir. 1980) ("Compulsion by unwanted and unlawful government edict is injury per se."); *see also Chevron, U.S.A., Inc. v. FERC*, 193 F. Supp. 2d 54, 60-61 (D.D.C. 2002) (collecting cases).

Further, requiring Plaintiffs to threaten to leave ISO-NE would work a significant hardship on them in the form of substantial regulatory and business risk. Hardship alone in the absence of court intervention can suffice for judicial consideration. *See Duncan*, 612 F.3d at 115. "In assessing the hardship to the parties resulting from withholding judicial resolution, courts 'ask whether the challenged action creates a direct and immediate dilemma for the parties.'" *Roman Catholic Archdiocese of New York v. Sebelius*, 907 F. Supp. 2d 310, 334 (E.D.N.Y. 2012) (quoting *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 134 (2d Cir. 2008)). Such a dilemma exists here. Plaintiffs must either declare an intent to leave ISO-NE (risking substantial economic harm and potentially losing the ability to operate in Connecticut) or remain silent and lose their contractual and property rights. Aside from those constitutionally sufficient injuries, remaining bound by the RTO Requirement works an ongoing injury to Plaintiffs' business through its propagation of regulatory uncertainty.

Where contractual provisions are burdened but Plaintiffs have not yet attempted to act under them, the court "will be in no better position later than now to decide the question of whether

the [RTO Requirement] unconstitutionally impair[s] plaintiffs' contract rights[.]" *McDonald's Corp.*, 822 F. Supp. at 605. The core consideration behind standing—preventing parties from seeking purely advisory opinions—is absent here, as Defendants advance the central purpose of the statute, impacting both Plaintiffs' constitutional rights and their economic interests. There is no basis for this Court to wait while Defendants filibuster here and work to harm Plaintiffs in a separate forum.

Moreover, Defendants' contention that PURA has not caused Plaintiffs' injuries, Defs' Br. at 34, is incorrect. PURA is a party to the FERC Complaint, invoking its authority to force Plaintiffs to either remain within ISO-NE or shutter their transmission operations in Connecticut—a move that would seriously damage or terminate Plaintiffs' business in the State—as a basis for the FERC Complaint. Defendants cannot maintain a jurisdictional two-step: asserting the effectiveness of the RTO Requirement in one forum and then denying to this Court that the RTO Requirement is already affecting Plaintiffs' rights.

#### 3. FERC Adjudication of Defendants' Section 206 Complaint Does Not Immunize Defendants

Finally, Defendants' argument that FERC is an independent intervening actor and thus they do not cause Plaintiffs' asserted injury based on the FERC Complaint mischaracterizes both the facts and law. As the Second Circuit has stated, the "causal-connection element of Article III standing . . . does not create an onerous standard." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023). The only requirement is that the defendant's action have a "predictable"—not certain, but predictable—effect on the plaintiff's rights for the injury to be traceable. *Id.* In *Ateres Bais Yaakov*, which Defendants cite on this point, the Second Circuit held that the plaintiff religious school's injury was traceable to the defendants' actions when the defendants "took steps [involving local zoning] to frustrate [plaintiff's] planned

acquisition" of a property, even though the final decisions that harmed the plaintiff—a loss of financing and the option to purchase the property—were independent choices made by third parties influenced but not coerced by the defendants. *Id.* at 349-50, 353. *See also Tweed-New Haven Airport Auth.*, 930 F.3d at 71 ("The fact that a project's ultimate completion may be uncertain because a plaintiff must undertake additional steps . . . does not defeat standing.").

Here, Defendants' actions have a predictable effect on Plaintiffs' rights. FERC is bound to adjudicate a complaint made under Section 206 of the FPA without independently determining whether the complaint should be pursued in the first instance. Defendants' initiation of a FERC proceeding has a predictable impact on Plaintiffs' rights, both by bringing them into question at all and by achieving the intended purpose of the RTO Requirement, *i.e.*, eliminating Plaintiffs' RTO Adder.[19] That FERC will ultimately adjudicate the complaint before it does not let Defendants off the hook.

Defendants' treatment of FERC's authority reveals a broader problem with their approach to standing, in that it postpones judicial review indefinitely. Plaintiffs allegedly must wait until FERC acts before challenging the State's effort to eliminate the RTO Adder, or else they have not suffered an injury. At the same time, Defendants minimize their own role by portraying FERC as the operative decisionmaker, arguing that someone else (FERC) caused the completed harm. Defendants cannot rely on the absence of a FERC order to defeat review today while relying on the existence of a FERC order to sever responsibility tomorrow.

[19] There is also no evidence that FERC would have independently taken action to revoke the RTO Adder based on the RTO Requirement, given that the RTO Requirement was in effect for almost a year before Defendants brought the FERC Complaint.

### C. Plaintiffs' Causes of Action Related to the Filed Rate Doctrine and Supremacy Clause Are Not Excluded

Defendants separately argue that Plaintiffs' claims related to the filed rate doctrine and Supremacy Clause must be dismissed because "[n]one of the relevant FPA provisions here create a private right for public utilities that can be enforced through Section 1983." Defs' Br. at 38. In addition to a handful of non-binding cases holding that Supremacy Clause challenges to matters regulated by the FPA are limited, Defendants rely on *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246 (1951), for the notion that the FPA does not provide a private right of action. Defs' Br. at 38 n.21. Defendants misread *Montana-Dakota Utilities*, which holds only that the FPA's *just and reasonable rate standard* is for FERC, not the courts, to apply. *See* 341 U.S. at 251 ("Petitioner identifies as the source of its cause of action the Federal Power Act's requirement of reasonable electric utility rates . . . But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce."). It does not address utilities' rights under Section 205 and the U.S. Constitution, which are at issue here. Compl., ¶¶ 96-97, 108-27, 130-33, 141-46; *see Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 603 (1944); *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 9 (D.C. Cir. 2002) ("Petitioners contend that FERC lacks the authority to require the utility owners to give up their statutory rights under section 205. We agree."). *City of Winnfield, La. v. FERC*, 744 F.2d 871, 875 (D.C. Cir. 1984) (Section 205 "is intended for the benefit of the utility.").[20]

---

[20] *Pac. Gas & Elec. Co. v. Lynch*, CV 01-1083-RSWL (SHx), 2001 WL 840611, at *10 (C.D. Cal. May 2, 2001), a twenty-five-year-old unreported district court case, which dismissed a utility's challenge to California Public Utilities Commission rules governing retail rates, did not address the arguments Plaintiffs have raised here regarding their rights under Section 205 and the Constitution. Defendants' other cases (*see* Defs' Br. at 39-40 & nn. 21–23), in addition to being non-binding, are inapposite, as none address whether a utility may enforce its rights under FPA

District courts have jurisdiction under their inherent power as courts of equity to entertain motions for injunctive relief, notwithstanding congressional silence on the issue. *See Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 882-87 (2d Cir. 1981). While Congress can diminish the inherent equitable power of a court, it cannot do so without speaking clearly. *See In re Letourneau*, 559 F.2d 892, 894 (2d Cir. 1977); *see also New Orleans Pub. Serv. Inc. v. New Orleans*, 491 U.S. 350, 359 (1989) ("That right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied."). Federal courts also have specific expertise in the resolution of constitutional questions as compared to administrative agencies. *See Pappas v. Giuliani*, 118 F. Supp. 2d 433, 442 (S.D.N.Y. 2000), *aff'd*, 290 F.3d 143 (2d Cir. 2002) ("Although often highly competent in their designated area of law, administrative decisionmakers generally have neither the training nor the experience to adjudicate complex federal constitutional issues."). Courts' inherent authority extends to actions favoring judicial economy and efficiency in the resolution of disputes. *See Carroll v. Trump*, 88 F.4th 418, 433-34 (2d Cir. 2023).

Here, Plaintiffs have brought suit to challenge the constitutionality of Connecticut legislation that, among other violations, is preempted by Plaintiffs' filed rates and other federal law. None of the federal laws at issue "speak clearly" that the Court lacks authority to rule on these issues. The Court can address these issues through its inherent authority, and given the Court's unique expertise on constitutional matters and the benefits to judicial economy, the Court may

---

Section 205 and the U.S. Constitution in the face of illegal state action via a Section 1983 case. *See Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64 (1st Cir. 2017) (considering whether one private party could sue another for alleged violations of the FPA); *Coal. for Competitive Elec., Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 566–67 (S.D.N.Y. 2017); *Village of Old Mill Creek v. Star*, No. 17 CV 1163, 2017 WL 3008289, at *9 (N.D. Ill. July 14, 2017); *Lawrenceburg Power, LLC v. Lawrenceburg Municipal Utilities*, 410 F. Supp. 3d 943 (S.D. Ind. 2019); *Pastoriza v. Pub. Serv. Co. of N.H.*, Case No. 24-cv-252-PB-TSM, 2025 WL 662935 (D.N.H. Feb. 28, 2025).

consider these claims. Moreover, Defendants cannot invoke the statute and then seek to deny Plaintiffs any right to have the federal court consider it.

## V. CONCLUSION

Defendants' theory would leave the RTO Requirement actively invoked, actively relied upon, and actively pursued, yet effectively insulated from judicial review. Connecticut previously told the Supreme Court that constitutional rights cannot be "nullified indirectly" through "evasive schemes" designed to avoid judicial review. *Whole Woman's Health* Amicus at 16. Yet that is what Defendants urge here: State officials invoke the RTO Requirement before FERC, seek affirmative relief under it, and continue pursuing the precise outcome the statute was enacted to achieve, while simultaneously arguing that no proper defendant exists to challenge that conduct. *Ex parte Young* was designed to prevent state officials from insulating their conduct from judicial review in precisely this manner.

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' motion to dismiss and grant all such other relief to which they may be entitled.

Respectfully submitted,

*/s/ Richard L. Street*

David T. Martin (Bar No. ct27581)
UIL Holdings Corporation
180 Marsh Hill Road
Orange, CT 06477
(475) 331-5399
david.martin@avangrid.com

Richard L. Street (Bar No. ct13658)
Brian T. Henebry (Bar No. ct10002)
Carmody Torrance Sandak & Hennessey LLP
195 Church Street
New Haven, CT 06510
(203) 777-5501
rstreet@carmodylaw.com
bhenebry@carmodylaw.com

Catherine McCarthy (*pro hac vice*)
Britt Steckman (*pro hac vice*)
Bracewell LLP
2001 M Street, NW
Washington, DC 20036
(202) 828-5839
cathy.mccarthy@bracewell.com
britt.steckman@bracewell.com

*Counsel for The United Illuminating Company*

Duncan R. MacKay (Bar No. ct03370)
Mary E. Grover (*pro hac vice*)
Eversource Energy Service Company
107 Selden Street
Berlin, CT 06037
(860) 665-3495
duncan.mackay@eversource.com
mary.grover@eversource.com

Michelle S. Kallen (*pro hac vice*)
Karen Bruni (*pro hac vice*)
Alexander A. Langer (*pro hac vice*)
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6228
mkallen@steptoe.com
kbruni@steptoe.com
alanger@steptoe.com

*Counsel for The Connecticut Light and Power Company*

Dated: November 9, 2026
New Haven, Connecticut

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, a copy of the foregoing was served on all counsel of record in this action by operation of the Court's Electronic Filing System as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Richard L. Street*
Richard L. Street (Bar No. ct13658)
Carmody Torrance Sandak & Hennessey LLP
195 Church Street
New Haven, CT 06510
(203) 777-5501
rstreet@carmodylaw.com